Slip Op. 06-61

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                            :
SANGO INTERNATIONAL L.P.,                   :
                                            :
            Plaintiff,                       :
                                            :
      v.                                     :
                                            :
UNITED STATES,                              :    Before: Judith M. Barzilay, Judge
                                            :    Court No. 05-00145
            Defendant,                       :
                                            :
WARD MANUFACTURING, INC.,                   :
ANVIL INTERNATIONAL, INC.,                  :
                                            :
            Defendant-Intervenors.          :
_____:

OPINION

[Plaintiff's motion for judgment on the agency record is denied.]

Dated: May 1, 2006

      *Baker & McKenzie LLP* (*William D. Outman, II*), (*Stuart P. Seidel*), (*Kevin J. Sullivan*) for Plaintiff Sango International, L.P.

      (*Patricia M. McCarthy*), Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; (*Kelly B. Blank*), Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; (*David Samuel Silverbrand*) Commercial Litigation Branch, Civil Division, United States Department of Justice, *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Kemba Eneas*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for Defendant.

      *Schagrin Associates* (*Roger B. Schagrin*), (*Brian E. McGill*), (*Michael J. Brown*), for Defendant-Intervenors Ward Manufacturing, Inc., & Anvil International, Inc.

## I. Introduction

This case concerns the scope of the antidumping duty order issued by the Department of Commerce ("Commerce" or "Department") on *Certain Malleable Iron Pipe Fittings, Cast, Other Than Grooved, from the People's Republic of China*. 68 Fed. Reg. 69,376 (Dec. 12, 2003) ("Order"). Pursuant to Rule 56.2 of the United States Court of International Trade, Plaintiff Sango International L.P. ("Sango") has moved for a judgment upon the agency record declaring that Commerce's scope ruling holding that gas meter swivels and gas meter nuts fall within the ambit of the Order is unsupported by substantial evidence on the record and otherwise is not in accordance with the law. *See Notice Final Scope Ruling* (Jan. 11, 2005) (Pl.'s App. 630-44) ("Scope Ruling"). For the reasons stated below, this court denies Plaintiff's motion for judgment on the agency record.

## II. Procedural History

On December 12, 2003, Commerce issued an antidumping order imposing duties on "certain malleable iron pipe fittings, cast, other than grooved fittings, from the People's Republic of China" ("China" or "PRC"). *Order*, 68 Fed. Reg. 69,377. The Order described the covered products as

> certain malleable iron pipe fittings, cast, other than grooved fittings, from the People's Republic of China. The merchandise is classified under item numbers 7307.19.90.30, 7307.19.90.60 and 7307.19.90.80 of the Harmonized Tariff Schedule (HTSUS). Excluded from the scope of this order are metal compression couplings, which are imported under HTSUS number 7307.19.90.80. A metal compression coupling consists of a coupling body, two gaskets, and two compression nuts. These products range in diameter from 1/2 inch to 2 inches and are carried only in galvanized finish. Although HTSUS subheadings are provided for convenience and U.S. Customs and Border Protection (CBP) purposes, the Department's written description of the scope of this proceeding is dispositive.

*Id.*[1]  Pursuant to 19 C.F.R. § 351.225(c)(1), on July 28, 2004, Nitek Electronics, Inc., an importer

of gas meter swivels and gas meter nuts, and Sango, an United States manufacturer which

insulates imported gas meter swivels, applied to Commerce for a scope ruling that would exclude

gas meter swivels and nuts from the Order.  *See Application Scope Ruling Meter Swivels &*

*Meter Nuts* (Pl.'s App. 1-12).  On August 10, 2004, Defendant-Intervenors Ward Manufacturing,

Inc. ("Ward"), and Anvil International, Inc. ("Anvil"),[2] submitted comments to Commerce

contending that gas meter swivels and nuts fall within the Order because they are "malleable iron

pipe fittings which are cast and that are not grooved fittings and are not compression fittings."

*Ward Resp. Application Scope Ruling* (Def.'s App. Tab 1, at 1).

Commerce began a formal scope inquiry on September 13, 2004, in accordance with 19

C.F.R. § 351.225(e), as it was "unable to determine conclusively that meter swivels and meter

nuts are pipe fittings and are treated as such within the industry."  *Scope Inquiry Initiation* (Pl.'s

App. 289-90).  As interested parties, Anvil and Ward respectively submitted briefs on whether

---

[1]The language describing the scope of the antidumping investigation remained identical from the investigation's initiation, through the preliminary and final determinations, to the antidumping order, except that the investigation notice had yet to exclude metal compression couplings from the scope.  *See Notice of Initiation of Antidumping Duty Investigation: Certain Malleable Iron Pipe Fittings from the People's Republic of China*, 67 Fed. Reg. 70,579, 70,579 (Dep't Commerce Nov. 25, 2002); *Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Certain Malleable Iron Pipe Fittings from the People's Republic of China*, 68 Fed. Reg. 33,911, 33,913 (Dep't Commerce June 6, 2003); *Final Determination of Sales at Less Than Fair Value and Critical Circumstances: Certain Malleable Iron Pipe Fittings from the People's Republic of China*, 68 Fed. Reg. 61,395, 61,397 (Dep't Commerce Oct. 28, 2003); *Notice of Amended Final Determination of Sales at Less Than Fair Value: Certain Malleable Iron Pipe Fittings from the People's Republic of China*, 68 Fed. Reg. 65,873, 65,873 (Dep't Commerce Nov. 24, 2003).

[2]Defendant-Intervenors were petitioners in Commerce's original antidumping investigation.

meter swivels and nuts lie within the scope of the Order on October 4, 2004, and October 14, 2004. On October 18, 2004, Commerce notified Ward that it had submitted these filings without the certifications mandated by 19 C.F.R. § 351.303(g), forcing the Department to reject them. The Department, however, gave Ward a one-day extension to resubmit its briefs, which Ward promptly did. *See Commerce Deficiency Letter* (Def.-Intervenors' App. Tab 4); Ward Case Br. (Oct. 19, 2004) (Def.-Intervenors' App. Tab 5); Ward Rebuttal Br. (Oct. 19, 2004) (Def.-Intervenors' App. Tab 5).

In its investigation, Commerce analyzed the Order, the petition, the initial investigation, determinations of the United States International Trade Commission ("ITC"), and the determinations of the Secretary of Commerce to determine whether these sources proved dispositive as to whether gas meter swivels and nuts fall within the Order's scope. *See* 19 C.F.R. § 351.225(k)(1). Commerce found these sources dispositive and issued the Scope Ruling on January 11, 2005, finding that gas meter swivels and gas meter nuts fall within the scope of the Order. *See Scope Ruling* at 12-14. Specifically, it determined that:

> First, these products are manufactured from malleable iron using a casting process in the PRC. Second, these products are indisputably "fittings;" they are "pipe fittings" because they are parts of a piping system, they direct the flow of the gas through a piping system, and can be, although are not always, connected to other pipe fittings or pipes. Finally, they are neither grooved fittings nor compression couplings, both of which are specifically excluded.

*Id.* at 12. Sango then brought this action to contest the Scope Ruling.

Plaintiff Sango sets forth three contentions in its motion for judgment on the agency record. First, it maintains that it was clear error for Commerce to grant Defendant-Intervenors extensions to refile their case and rebuttal briefs after discovering that the initial submissions lacked administratively-mandated certifications. Consequently, Sango avers that these

submissions should not constitute a part of the agency record. Second, Sango claims that gas meter swivels and gas meter nuts lie unambiguously outside the scope of the Order, "as evidenced by the language of the Order, the facts of the record and other administrative determinations," rendering Commerce's Scope Ruling unsupported by substantial evidence and otherwise not in accordance with the law. Pl.'s Mot. J. A.R. 2. Finally, Sango believes the court should deem Commerce's Scope Ruling invalid because the Department failed to consider the so-called *Diversified Products* criteria[3] enumerated in 19 C.F.R. § 351.225(k)(2).

### III. Discussion

**A. Preliminary Issues: Defendant-Intervenors' Submission Extension**

Sango asserts that the Department erred by granting Anvil and Ward a one-day extension to re-file their case brief and rebuttal case brief, which lacked certifications required by 19 C.F.R. § 351.303(g), and that the briefs therefore should not become part of the record. *See* Mem. Supp. Pl.'s Mot. J. A.R. 35. Plaintiff's argument is without merit. Only with a demonstration of "substantial prejudice" can Sango challenge Commerce's decision to provide Defendant-Intervenors with a one-day extension to resubmit their documents. *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970) (citation omitted); *see* 5 U.S.C. § 706 (1966) ("due account shall be taken of the rule of prejudicial error" in reviewing agency action); *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 394-95 (Fed. Cir. 1996). The Supreme Court has long upheld "the general principle that (i)t [sic] is always within the discretion of . . . an

---

[3]These factors receive their name from *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F. Supp. 883 (1983), in which this Court first outlined them prior to their regulatory codification. These descriptive elements encompass: "(i) The physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2).

administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." *Am. Farm Lines*, 397 U.S. at 539 (quotations & citation omitted). Further, Commerce's own regulations state that "[u]nless expressly precluded by statute, the Secretary may, for good cause, extend any time limit established" within the antidumping and countervailing duties regulations. 19 C.F.R. § 351.302(b).[4] Plaintiff makes no assertion that substantial prejudice to its case arose from the Department's decision. Therefore, its claim must fail.

**B. The Scope Ruling**

### 1. Standard of Review

In reviewing a Commerce antidumping order scope determination, this court upholds the Department's conclusion unless the court finds it "unsupported by substantial evidence or otherwise not in accordance with law." *Steel Auth. of India, Ltd. v. United States*, 25 CIT 482, 485, 149 F. Supp. 2d. 921, 926 (2001) (quoting 19 U.S.C. § 1516a(b)(1)(B) (1994)) (quotations omitted); *see* 19 U.S.C. § 1516a(b)(1)(B)(i) (1996); *Nippon Steel Corp., NKK v. United States*, 219 F.3d 1348, 1355 (Fed. Cir. 2000). In this context, "substantial evidence" denotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotations omitted). Crucially, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620 (citation omitted). Similarly, a scope determination is not in accordance with law "if it changes the scope of an order or

---

[4]The court assumes that such consideration is given equally to submissions of both petitioners and respondents.

interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 28 CIT ___, ___, 342 F. Supp. 2d 1172, 1183 (2004). "Scope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *Id.* at 1184 n.6 (quoting *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002)) (quotations omitted).

The first step in evaluating whether Commerce properly placed gas meter swivels and nuts within the scope of the Order requires the court to examine "the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order." *Duferco Steel*, 296 F.3d at 1097 (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990)) (quotations omitted); *see Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005); 19 C.F.R. § 351.225(k). Among these sources, the language of the order receives the greatest weight. *See Tak Fat Trading*, 396 F.3d at 1382; *Duferco Steel*, 296 F.3d at 1097. If these materials do not prove dispositive, the court then turns to the *Diversified Products* criteria outlined in 19 C.F.R. § 351.225(k)(2) to make its determination. *See Tak Fat Trading*, 396 F.3d at 1382; *Allegheny Bradford*, 342 F. Supp. 2d at 1183; 19 C.F.R. § 351.225(k).

### 2. The 19 C.F.R. § 351.225(k)(1) Factors

As noted earlier, Commerce's Order defined the Order's scope as encompassing

certain malleable iron pipe fittings, cast, other than grooved fittings, from the People's Republic of China. The merchandise is classified under item numbers 7307.19.90.30, 7307.19.90.60 and 7307.19.90.80 of the Harmonized Tariff Schedule (HTSUS). Excluded from the scope of this order are metal compression couplings, which are imported under HTSUS number 7307.19.90.80. A metal

> compression coupling consists of a coupling body, two gaskets, and two
> compression nuts.  These products range in diameter from 1/2 inch to 2 inches
> and are carried only in galvanized finish.

*Order*, 68 Fed. Reg. at 69,376.  Likewise, throughout the antidumping proceedings, Commerce

used almost identical language to describe the scope.  *See supra* n.1.  The antidumping petition

and related ITC documents employed the same terminology as well.  *See* Anvil & Ward,

*Malleable Iron Pipe Fittings from China: Antidumping Duty Petition* 4 (Oct. 30, 2002)

(describing requested investigatory scope as in Order, though lacking metal compression

coupling exception) ("Petition"); *Malleable Iron Pipe Fittings from China*, ITC Publ'n No.

3649, Investigation No. 731-TA-1021 (Final), at 5 (Dec. 2003) ("ITC, 3649 ").

The ITC publications and administrative documents regarding the antidumping

investigation flesh out the meaning of the Order's text.  According to the ITC,

> [p]ipe fittings generally are used for connecting the bores of two or more pipes or
> tubes, connecting a pipe to some other apparatus, changing the direction of fluid
> flow, or closing the pipe.  The material from which MCIPF [malleable cast iron
> pipe fittings] are made, cast iron, is a general term for alloys composed primarily
> of iron, carbon (greater than two percent) and silicon.

*Malleable Iron Pipe Fittings from China: Determination and Views of the Commission*, ITC

Publ'n No. 3568, Investigation No. 731-TA-1021 (Preliminary), at 5 (Dec. 2002) (footnote

omitted) ("ITC, 3568 "); *see* ITC, 3649 at 3; *see also Petition* at 5 ("Malleable pipe fittings are

*normally* . . . attached to pipe by screwing.") (emphasis added); Anvil& Ward, *Amendment to the*

*Petition for the Imposition of Antidumping Duties: Malleable Iron Pipe Fittings from China*, at 4

(Nov. 12, 2002) (same) ("Pet. Am.").  Further, pipe fittings are threaded, "normally" to the

American National Standards Institute (ANSI) B1.20.1 specification.  *Pet. Am.* at 3; *Petition* at

4; *see* ITC, 3568 at 6.[5]

### 3. Plaintiff's Argument

Sango believes that "the discussion of the class or kind of merchandise contained in the Order unambiguously excludes" gas meter swivels and gas meter nuts from this rubric and that therefore "the Department's Scope Ruling to the contrary is not supported by substantial evidence nor is it otherwise in accordance with the law." Mem. Supp. Pl.'s Mot. J. A.R. 2. It bases this claim on the specialized nature of the products. A meter swivel can connect only with a gas meter on one end and a pipe fitting on the other,[6] while a "pipe 'fitting' is *almost always* physically threaded onto one end of a length of pipe and is the means whereby the pipe is joined to (i) another length of pipe; (ii) a gas meter bar or (iii) a gas meter swivel." Mem. Supp. Pl.'s Mot. J. A.R. 9 (emphasis added). In essence, because neither gas meter swivels nor nuts can attach to a length of pipe,[7] they cannot qualify as pipe fittings. *See* Mem. Supp. Pl.'s Mot. J. A.R. 10, 16, 19; Pl.'s Reply 2, 4. In a parallel line of reasoning, Plaintiff claims that gas meters and swivels constitute different articles of commerce than pipe fittings and, therefore, cannot fall within the scope of the Order. *See* Mem. Supp. Pl.'s Mot. J. A.R. 9.

---

[5]Union nuts, which are undisputably covered by the Order, are threaded to a different ANSI specification, B16.39. Def.-Intervenors' Mem. P. & A. Opp'n Mot. Sango J. A.R. 12 n.7.

[6]A gas meter nut is secured to a meter swivel to attach the latter to a gas meter. *See* Mem. Supp. Pl.'s Mot. J. A.R. 16, 17.

[7]Whether a swivel can connect directly to a pipe remains contentious. In contrast to Sango, Commerce insists that "[m]eter swivels and nuts can be physically connected to a pipe." Def.'s Mem. Opp'n Pl.'s Mot. J. A.R. 10 (quoting *Scope Ruling* at 12) (quotations omitted); *see* Def.-Intervenors' Mem. P. & A. Opp'n Mot. Sango J. A.R. 12.

### 4. Analysis

Despite Sango's protests to the contrary, gas meter nuts and swivels possess the characteristics of pipe fittings outlined in the Order and thus fall within its scope. As Plaintiff concedes, the products are cast, made of malleable iron, manufactured in the PRC, and do not fall within the express exceptions within the Order. *See* Pl.'s App. 610. Likewise, the swivel-nut unit[8] connects to a gas meter and links this apparatus to a piping system via a less specialized pipe fitting to manipulate the flow of the gas. *See* Pl.'s Br. 10; *see, e.g.*, Pl.'s App. 369, 374. Although the swivel may not directly touch a pipe, there is nothing in the record of this case to require that pipe fittings must directly connect to a pipe to be considered pipe fittings. Further, swivels are threaded according to the ANSI B1.20.1 specification characteristic of all pipe fittings. Even Sango's brief notes that pipe fittings "almost always" connect to a pipe on one end; sometimes they do not. Mem. Supp. Pl.'s Mot. J. A.R. 9. Finally, Sango's contention that gas meters and swivels are separate articles of commerce from pipe fittings fails since the Order does not address this issue when outlining its scope. Together, these facts, read in light of the Order's language, reasonably provide adequate evidence to place gas meter swivels and gas meter nuts within the scope of the Order.[9] Consequently, this court must uphold the Department

---

[8]Since a gas meter swivel and nut must bind with each other to function, the court will treat them as one unit for this discussion, just as it would, for example, a pipe fitting union comprised of three pieces screwed together. *Cf.* Def.-Intervenors' Mem. P. & A. Opp'n Mot. Sango J. A.R. 12 & n.7.

[9]Sango's argument that the HTSUS classification headings invoked in the Order and other administrative materials preclude the inclusion of gas meter swivels and nuts within the scope is groundless. *See* Mem. Supp. Pl.'s Mot J. A.R. 11, 21-27. The Order itself states that "[a]lthough HTSUS subheadings are provided for convenience and U.S. Customs and Border Protection (CBP) purposes, the Department's written description of the scope of this proceeding is dispositive." *Order*, 68 Fed. Reg. at 69,376; *see Tak Fat Trading Co.*, 396 F.3d at 1383.

of Commerce's Scope Ruling as supported by substantial evidence and in accordance with law.[10]

### IV. Conclusion

For the reasons stated above, Sango's motion for judgment on the agency record is

DENIED.

|  |  |
|---|---|
| May 1, 2006 | /s/ Judith M. Barzilay |
| Dated:_____ | _____ |
| New York, NY | Judge |

---

[10]Because the court finds that the language of the antidumping petition, administrative factual findings and legal conclusions, and the preliminary antidumping order dispositively places gas meter swivels and gas meter nuts within the scope of the antidumping order, it holds that the Department did not err by not examining the *Diversified Products* factors in 19 C.F.R. § 351.225(k)(2), and the court also need not address these criteria. *See Tak Fat Trading*, 396 F.3d at 1382; *Allegheny Bradford*, 342 F. Supp. 2d at 1183; 19 C.F.R. § 351.225(k).