Slip Op. 08-37

UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————

|  |  |  |
|---|---|---|
| SANGO INTERNATIONAL L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | Before: Judith M. Barzilay, Judge |
| | : | Court No. 05-00145 |
| Defendant, | : | |
| | : | |
| WARD MANUFACTURING, INC., | : | |
| ANVIL INTERNATIONAL, INC., | : | |
| | : | |
| Defendant-Intervenors. | : | |

—————————————————————

OPINION

[Commerce's Final Redetermination is affirmed.]

Dated: April 03, 2008

*Baker & McKenzie, LLP*, (*William D. Outman, II*), *Stuart P. Seidel*, and *Kevin J. Sullivan* for Plaintiff.

*Jeffrey S. Bucholtz*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; (*Loren M. Preheim*), *David S. Silverbrand*, *Kelly B. Blank*, and *Michael D. Panzera*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Jonathan Zielinski*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for Defendant United States.

*Schagrin Associates*, (*Roger B. Schagrin*), *Brian E. McGill*, and *Michael J. Brown* for Defendant-Intervenors.

**BARZILAY, JUDGE:** This case returns to the court following a redetermination by the

U.S. Department of Commerce ("Commerce") pursuant to the court's remand order in *Sango*

*Int'l L.P. v. United States*, Slip Op. 07-101, 2007 WL 1888342 (July 2, 2007) (not reported in F. Supp.) ("*Sango III*").[1]  Plaintiff Sango International L.P. challenges Commerce's final scope ruling, which determined that gas meter swivels and nuts fell within the scope of the antidumping order on certain malleable iron pipe fittings from China.  *See Final Scope Ruling on Whether Meter Swivels and Meter Nuts are Excluded from the Scope of the Antidumping Duty Order on Malleable Iron Pipe Fittings from the People's Republic of China* (ITA Jan. 11, 2005) ("*Final Scope Ruling*"); *Antidumping Duty Order: Certain Malleable Iron Pipe Fittings from the People's Republic of China*, 68 Fed. Reg. 69,376, 69,377 (Dep't Commerce Dec. 12, 2003) (the "*AD Order*").  For the reasons stated herein, the court now holds that substantial evidence supports Commerce's conclusion that gas meter swivels and nuts are within the scope of the *AD Order*.  *See Final Redetermination Pursuant to Court Remand: Sango International L.P. v. United States* (ITA Oct. 26, 2007) ("*Final Redetermination*"), *available at* http://ia.ita.doc.gov/remands/07-101.pdf.  Therefore, Commerce's *Final Redetermination* is affirmed.

## I. Background

In its January 2005 *Final Scope Ruling*, Commerce determined that gas meter swivels and nuts fall within the scope of the *AD Order* based on its conclusions that the scope language was dispositive and that further analysis under the 19 C.F.R. § 351.225(k)(2) criteria was

---

[1]  Familiarity with the procedural history and reasoning of *Sango Int'l L.P. v. United States*, 30 CIT __, 429 F. Supp. 2d 1356 (2006) ("*Sango I*"), *Sango Int'l, L.P. v. United States*, 484 F.3d 1371 (Fed. Cir. 2007) ("*Sango II*"), and *Sango III* is presumed.

unnecessary.[2] *See Final Scope Ruling* at 14.  Plaintiff appealed the ruling to this court, alleging

that Commerce's holding was unsupported by substantial evidence on the record.  *See Sango I*,

30 CIT at __, 429 F. Supp. 2d at 1357.

The court affirmed Commerce's ruling, holding that the facts presented in the

administrative record when read together "in the light of the [*AD Order*]'s language, reasonably

provide adequate evidence to place gas meter swivels and gas meter nuts within the scope of the

[*AD Order*]." *Id.* at __, 429 F. Supp. 2d at 1362.  Finding that "the language of the antidumping

petition, [the] administrative factual findings and legal conclusions, and the preliminary

antidumping order dispositively place[d] gas meter swivels and gas meter nuts within the scope

of the antidumping order," this court held that Commerce "did not err by not examining the

*Diversified Products* factors in 19 C.F.R. § 351.225(k)(2) . . . ." *Id.* at __, 429 F. Supp. 2d at

1362 n.10; *see Diversified Prods. Corp. v. United States*, 6 CIT 155,162, 572 F. Supp. 883, 889

(1983) (setting out scope inquiry criteria that were subsequently codified in § 351.225(k)(2)).

Plaintiff then appealed.

In May 2007, the Federal Circuit reversed and remanded with instructions that Commerce

"consider the criteria in section 351.225(k)(2) in arriving at a scope determination," making clear

---

[2]  The relevant scope language of the *AD Order* reads:
> For purposes of this order, the products covered are certain
> malleable iron pipe fittings, cast, other than grooved fittings, from
> the People's Republic of China. . . . Excluded from the scope of
> this order are metal compression couplings, which are imported
> under HTSUS number 7307.19.90.80.  A metal compression
> coupling consists of a coupling body, two gaskets, and two
> compression nuts.

*AD Order*, 68 Fed. Reg. at 69,377.

that it "express[ed] no views as to what the results of that determination should be." *Sango II*, 484 F.3d at 1382 & n.10. The Federal Circuit explained that "when the criteria set forth in section 351.225(k)(1) – the description of the merchandise contained in the antidumping petition, the initial investigation by Commerce and the Commission, and the determinations of Commerce and the Commission – are not 'dispositive,' then Commerce must, in issuing its scope ruling, 'further consider' the criteria set forth in section 351.225(k)(2)." *Id.* at 1379.

The case was remanded to Commerce on July 2, 2007, for "consider[ation of] the factors set forth in 19 C.F.R. § 351.225(k)(2) . . . ." *Sango III*, Slip Op. 07-101, 2007 WL 1888342, at *1. After releasing a draft remand determination to interested parties in September 2007, Commerce received comments from Plaintiff, as well as Defendant-Intervenors Ward Manufacturing, Inc. and Anvil International, Inc., regarding the new evidence and arguments that Plaintiff placed on the record. In October 2007, Commerce adopted the findings in its draft and filed its final remand redetermination with the Court. *See generally Final Redetermination*. Specifically, Commerce found that

> the physical characteristics of the merchandise at issue, the expectations of the ultimate purchasers, the ultimate use, and the channels of trade in which gas meter swivels and nuts are sold are the same as the type of merchandise covered by the scope of the [*AD Order*] on [malleable iron pipe fittings ("MIPF")] from the PRC.[3] We further found that the manner in which gas meter swivels and nuts are advertised is not the same as MIPF covered by the [*AD Order*]. However, we determined that the manner in which gas meter swivels and nuts are advertised alone is not enough to determine that gas meter swivels and nuts fall outside the scope of the [*AD Order*].

---

[3] For more information on Commerce's analysis of gas meter swivels and nuts, see *Final Redetermination* at 6-19. *See also Malleable Iron Pipe Fittings from China*, USITC Pub. 3649, No. 731-TA-1021, at 3-16, (Dec. 2003) ("*ITC Report*"), *available at* http://hotdocs.usitc.gov/docs/pubs/701_731/pub3649.pdf.

*Id.* at 18.  Based on these findings, Commerce ultimately concluded that "gas meter swivels and nuts are within the scope of the [*AD Order*]."  *Id.*  Plaintiff then brought this action to contest Commerce's *Final Redetermination*.

## II. Standard of Review

When reviewing a scope determination, this court must "sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (quotations & citation omitted).  In determining whether substantial evidence exists, "[the court] review[s] the record in its entirety, including all evidence that 'fairly detracts from the substantiality of the evidence.'"  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).  Even if "the possibility of drawing two inconsistent conclusions from the evidence" may exist, that possibility, in itself "does not prevent an administrative agency's findings from being supported by substantial evidence."  *Consolo*, 383 U.S. at 620.  Although the court gives "significant deference" to Commerce's interpretation of its own orders, "a scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms."  *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004) (citation omitted).  As a result, Commerce may interpret scope orders to include the subject merchandise "only if

they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *Id.* at 843 n.6, 342 F. Supp. 2d at 1184 n.6.

## III. Discussion

Plaintiff contests Commerce's final scope redetermination, claiming that Commerce erred in finding that meter swivels and nuts fall within the scope of the *AD Order*. Pl. Comments 2-3. To determine whether the scope of an order includes a particular product, Commerce will take the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the [International Trade] Commission" into account. § 351.225(k)(1). Where the criteria are not dispositive, Commerce will also consider the *Diversified Products* factors, as codified in the regulations: "(i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; (iv) the channels of trade in which the product is sold; and (v) the manner in which the product is advertised and displayed." § 351.225(k)(2); *see Diversified Prods. Corp.*, 6 CIT at 162, 572 F. Supp. at 889.

## A. Physical Characteristics Under § 351.225(k)(2)(i)

With regard to the physical characteristics analysis, Plaintiff argues the following: (1) Commerce was wrong to collectively evaluate swivels and nuts; (2) swivels and nuts do not connect directly to pipe; (3) swivels and nuts do not share the same threading standards with MIPF; and (4) swivels require gaskets to connect to gas meters, and thus differ from MIPF. Pl. Comments 3-12.

**1. Commerce's Collective Evaluation of Gas Meter Swivels and Nuts**

Plaintiff relies on *Sango II* to support its position that gas meter swivels and nuts must be treated separately for purposes of a scope determination, arguing that "the [Federal Circuit], in reversing the [Court of International Trade], evaluated gas meter swivels and gas meter nuts as separate and distinct products, and concluded that the gas meter swivel and gas meter nuts, on their own, differed from the pipe fittings in the [*AD Order*] . . . ." Pl. Comments 3-4. Plaintiff, however, misconstrues the court's conclusion in *Sango II*.

As the Federal Circuit explained in its decision:

> In sum, while we are not prepared to hold that Sango is entitled to a ruling by Commerce that gas meter swivels and nuts are outside the scope of the [*AD Order*], . . . we do hold that substantial evidence does not support Commerce's conclusion . . . . *We thus hold that Commerce should have considered the criteria of 19 C.F.R. § 351.225(k)(2)* to determine whether the swivels and nuts are pipe fittings within the scope of the [*AD Order*].

*Sango II*, 484 F.3d at 1381-82 (emphasis added). The plain meaning of the language makes clear that the Federal Circuit remanded the case simply to give Commerce an opportunity to perform a § 351.225(k)(2) analysis. As the decision contains no language suggesting or mandating that swivels and nuts should be treated separately, the court must employ the traditional standard for its review of Commerce's collective treatment of the products.

Furthermore, contrary to Plaintiff's allegations, the fact that the Federal Circuit addressed the characteristics of gas meter swivels and nuts *in turn* does not merit a conclusion that swivels and nuts are "separate and distinct" products. Pl. Comments 3. Indeed, the language of the opinion lends support to the opposite conclusion, *i.e.*, that gas meter swivels and nuts should be treated collectively. For example, the Federal Circuit noted that the "flanged end [of the swivel]

will *only* fit over and mate to a dry, diaphragm-type gas meter *through the use of a gas meter nut*." *Sango II*, 484 F.3d at 1380 (emphasis added). It also noted that "[a gas meter nut] can only be mated to a comparably threaded connection on a gas meter." *Id.* at 1381. Because the Federal Circuit opinion lacks a clear mandate that gas meter swivels and nuts must be evaluated separately, this court must determine whether substantial evidence supports Commerce's decision to evaluate swivels and nuts collectively. *See Fujitsu Gen. Ltd.*, 88 F.3d at 1038.

In this case, Commerce analyzed the evidence in the record and "[found] it reasonable to consider gas meter swivels and nuts collectively when considering whether gas meter swivels and nuts fall within the scope of the [*AD Order*]." *Final Redetermination* at 5-6. In so concluding, Commerce took several factors into consideration: (1) the court "treated gas meter swivels and nuts as a single unit because they must bind with each other to function"[4]; (2) the Federal Circuit did not make an explicit finding or mandate that gas meter swivels and nuts should be treated separately; (3) Plaintiff and A.Y. McDonald Manufacturing Co. ("McDonald") "submitted their scope ruling requests on gas meter swivels and nuts, collectively"; (4) "the record evidence show[ed] that gas meter nuts cannot be used without gas meter swivels, and that gas meter swivels cannot be used without gas meter nuts"; and (5) U.S. Customs and Border Protection's ("Customs") finding that "gas meter swivels and nuts are never used individually

---

[4] Although the court held that it would "treat [swivels and nuts] as a *one unit*" just as it would "a pipe fitting union comprised of three pieces screwed together," the court recognizes that swivels and nuts are separate components. *Sango I*, 30 CIT at __, 429 F. Supp. 2d at 1362 n. 8 (emphasis added). Nevertheless, "since a gas meter swivel and nut must bind with each other to function," these components must therefore be examined *collectively*. *Id.*

and, therefore, should be categorized under a single [heading of the HTSUS] category."[5] *Final Redetermination* at 5, 20. Based on the aforementioned factors, the court holds that substantial evidence supports a collective evaluation of swivels and nuts.

## 2. Plaintiff's "Directly Connect" Argument

Plaintiff relies on the ITC's statement that MIPF are "used for connecting the bores of two or more pipes or tubes, connecting a pipe to some other apparatus, changing the direction of fluid flow, or closing a pipe," to argue that gas meter swivels and nuts are not pipe fittings because they do not connect "directly" to pipe. *ITC Report* at 5; Pl. Comments 7-12. The court is not persuaded.

### a. "Direct" Connection between Swivels and Pipe

The record provides no support for Plaintiff's claim that gas meter swivels must connect directly to pipe.[6] Neither the language of the *AD Order* nor that of the *ITC Report* require MIPF to connect directly to pipe. *See AD Order*, 68 Fed. Reg. at 69,377; *ITC Report* at 5. Moreover, the ITC's definition does not specify whether any of the connections listed in the definition are more "typical" than others. *ITC Report* at 5; *see Final Redetermination* at 7. Thus, absent such a specification, there can be no requirement that swivels predominantly perform a particular function, *i.e.*, connect directly to a pipe, in order to qualify as MIPF.

---

[5] The Federal Circuit has held that "it is permissible to refer to Customs rulings on the [HTSUS] to find precision in the reach of the scope order." *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1386 (Fed. Cir. 2005).

[6] The court need not address whether gas meter nuts connect directly to pipe given Commerce's concession that "a gas meter nut can only be used for connecting a gas meter swivel to a gas meter and cannot be used for connecting two pipes together." *Final Redetermination* at 8.

The record also contains evidence that the domestic industry produces swivels with female threaded ends, which can connect directly to pipe with exterior threads. Pl. App. 29, 347; Pl. Comments 5. Although Sango attempts to focus the court's attention exclusively on male threaded swivels by alleging that female threaded swivels are uncommon and infrequently used, the very existence of female threaded swivels enables *some* swivels to connect directly to pipe and therefore undermines Plaintiff's argument.[7] Pl. Comments 5. The record also does not support Plaintiff's claims that "male threaded swivels are outside the scope of the [*AD Order*]" and that "[a]ll of the pipe fittings covered by the [*AD Order*] are female connections." Pl. Comments 5. Plaintiff's own submissions contain illustrations of male threaded MIPF as examples of pipe fittings within the scope of the *AD Order*. Pl. Comments 5; Pl.'s Reply Br. Ex. 1, *Sango I*, 30 CIT __, 429 F. Supp. 2d 1356[8]; Pl. App. 542-568.[9] In addition, "neither the *ITC Report*, the petition, nor the scope of the [*AD Order*] specify that only female threaded MIPF are included within the scope." *Final Redetermination* at 20. Therefore, Plaintiff's argument that the *AD Order* is limited to fittings with female threads fails.

That male threaded MIPFs fall within the scope of the *AD Order* strengthens the proposition that male threaded swivels are also MIPF despite their need for an additional fitting to connect with pipe. Within the piping system itself, connections containing a male threaded

---

[7] Moreover, because the central issue before this court is whether "gas meter swivels and nuts are MIPF which are covered by the scope of the [*AD Order*]," *not* whether swivels with a particular type of connection are MIPF, the court need not restrict its review solely to male threaded swivels. *Final Redetermination* at 20.

[8] Figs. 100-03, 121, 133–37, 241, 245-46.

[9] Figs. 1003-004, 1022, 1051, 1203-04, 1602, 1604, 1642, 1644, 1648, 1650.

MIPF also require a fitting with female threads on both ends in order to connect said fitting to a male threaded pipe.  The resulting connection – male threaded MIPF, a MIPF with female threads on both ends, and a pipe – illustrates that *two or more fittings may connect components within the piping system* and that fittings need not always create a "direct" connection between the bores of two or more pipes within the system.  *See ITC Report* at 5.  Similarly, to connect a gas meter to a piping system using a male threaded swivel requires a three-part connection consisting of a gas meter nut, a male threaded swivel, *and another MIPF*.  Just as the use of two or more MIPF to connect pipe does not render said fittings outside the scope of the *AD Order*, the use of a three-part connection consisting of a nut, swivel, and another MIPF does not exclude gas meter nuts from the scope of the *AD Order*.  Accordingly, Plaintiff's argument that gas meter swivels and nuts are not MIPF because they do not directly connect to pipe is without merit.

### b.  Connecting Pipe to "Some Other Apparatus"

Plaintiff's "direct connect" argument also fails because it overemphasizes that MIPFs are used for connecting the bores of two or more pipes while almost entirely ignoring that they can also be used for "connecting a pipe to some other apparatus."  *ITC Report* at 5; Pl. Comment 7-12.  In this case, swivels and nuts are used to connect pipe to "some other apparatus" – namely, the gas meter.[10]  *See ITC Report* at 5.  Without the use of a swivel and nut, it would be impossible to form a secure connection between the piping system and the gas meter.  *See Sango*

---

[10]  Because the court found that substantial evidence supports Commerce's collective evaluation of swivels and nuts, gas meter nuts need not directly connect pipe to some other apparatus in order to qualify as MIPF.  Rather, the swivel-nut unit need only create a connection between the piping system and the gas meter in order to meet the ITC's definition, and thereby fall within the scope of the *AD Order*.

*II*, 484 F.3d at 1381 (noting that swivels and nuts "allow a gas meter to be connected to the system."). Additionally, Commerce itself found that "[g]as meter swivels and nuts are expected to be used to connect a pipe to another apparatus, a gas meter." *Final Redetermination* at 15. Because gas meter swivels and nuts connect piping systems to the gas meters, both fixtures are MIPF within the scope of the *AD Order*.

### c. The Use of a Gasket to Make a Swivel-Meter Connection

As a corollary argument, Plaintiff also contends that swivels do not connect directly with gas meters and are more akin to compression fittings than MIPF because the flanged end requires a gasket and insulation in order to form a vibration-free and spark-free connection. Pl. Comments 10. Plaintiff then contrasts swivels and nuts to MIPF which "form a seal by the simple act of being screwed together with a length of pipe to form the seal." Pl. Comments 10. That swivels may require a gasket to make an ideal connection does not support the claim that swivels are akin to compression fittings, nor does it render swivels outside the scope of the *AD Order*. As the *AD Order* specifically states: "[e]xcluded from the scope of this order are metal compression couplings, . . . [which] consist[] of a coupling body, two gaskets, and two compression nuts." *AD Order*, 68 Fed. Reg. at 69,377. In contrast, a swivel requires *at most* one nut and one gasket to function optimally, while the specifically excluded product requires two nuts and two gaskets. *See id.*; Pl. Comments 10. That the *AD Order* does not explicitly exclude products that use only one nut or fitting indicates that the use of a single nut and gasket is not significant enough to place that product outside the scope of the *AD Order*. As Commerce found, based on the *ITC Report*, "[v]arious apparatus may require [the] specific physical

characteristics of an MIPF to make the proper connection between the apparatus and the pipe.

The fact that the specific physical characteristics required by the apparatus may only be used in

certain types of MIPF connections does not preclude MIPF from being covered by the [*AD*

*Order*]." *Final Redetermination* at 7. Similarly, Commerce found that "[t]here is nothing in the

record or the scope that indicates that the scope intends to exclude all malleable iron pipe fittings

with specialized applications." *Scope Ruling* at 13. Thus, the court finds that the use of a single

gasket does not render the swivel-nut unit outside the scope of the *AD Order*.

### 3. Threading Specifications

Plaintiff also contends that gas meter swivels and nuts are not pipe fittings because they

are manufactured with thread specifications that differ from MIPF specifications. Pl. Comments

9-10; *see Final Redetermination* at 10, 22-23; *Sango II*, 484 F.3d at 1378, 1380. Although

Plaintiff cites evidence showing that gas meter swivels are manufactured to ANSI B109.1

specifications while pipe fittings comply with ANSI 16.3 or ANSI 16.41, Plaintiff ignores record

evidence contradicting its argument. Pl. Comments 10. For example, Commerce found that "the

standards included in the investigation were not intended as an exhaustive list of the standards

applicable to the MIPF covered by the [*AD Order*]" because they do not cover flanged MIPF and

because the original petition only lists the specifications to which malleable pipe fittings will

"normally" be produced.[11] *Final Redetermination* at 10, 23. Commerce then cited the *ITC*

---

[11] Use of the word "normally" demonstrates that there are other standards than those specified in the petition that are, nevertheless, included within the scope of the order. *See Dorbest Ltd., v. United States*, 30 CIT __, __, 462 F. Supp. 2d 1262, 1270 (2006) (stating that "use of the word 'normally' means that Commerce may select other data as warranted under the circumstances.").

*Report*, where the ITC "found one domestic like product to include all MIPF other than grooved fittings, co-extensive with the scope," and "specifically differentiated both threaded and flanged MIPF from the excluded grooved fittings . . . ." *Id.* at 23. The record evidence on ANSI specifications also indicates that gas meter swivels and nuts share some of the same threading standards.[12] As Commerce stated:

> Language from the [ITC] investigation states that MIPF are produced to ASTM, ANSI, and ASME specifications.[13] The ANSI B109.1 standard is included within the ANSI specifications. The language from the [ITC] investigation also states that "normally the ungalvanized fittings are produced to ASME 16.3 or ASME B16.39 using material specification ASTM A197 and threaded ANSI/ASME B1.20.1 . . . galvanized fittings are coated to ASTM A 153 or ASTM B633 and threaded to B.1.20.1." Gas meter swivels are manufactured to several standards as follows: "Body: Malleable Iron, per ASTM A197, Threads: per ANSI B.1.20.1, ANSI B 109.1, and Dimensions: per ANSI B109.1."[14] Gas meter swivels meet the material standard specification listed in the investigation, ASTM A197, and are threaded on one end to the threading standard specifically listed in the investigation, ANSI B.1.20.1.

*Final Redetermination* at 22-23 (footnotes omitted).[15] Given the extensive evidence on record contradicting Sango's claims concerning threading specifications, Plaintiff's argument fails.

---

[12] At oral argument, defense counsel noted that some gas meter swivels and nuts share threading standard ANSI B1.20.1 with MIPF. Pl. App. 472-473.

[13] *See ITC Report* at 7-8.

[14] Pl. App. 473, 524.

[15] In stating that "gas meter swivels are manufactured to ANSI B109.1 specifications, not ANSI 16.3 or ANSI 16.14, *as are pipe fittings*," Pl. Comments 10, Plaintiff ignores that swivels meet the material standard specification ASTM A197 and are threaded on one end to ANSI B.1.20.1. Pl. Comments 10; *see Final Redetermination* at 22-23.

**B. The Other § 351.225(k)(2) Factors**

Pursuant to § 351.22(k)(2)(ii)-(iii), Commerce must consider the expectations of the ultimate purchasers and the ultimate use of the product. *See* § 351.225(k)(2)(ii)-(iii). With regard to these factors, Plaintiff argues that purchasers neither expect swivels and nuts to meet MIPF threading standards, nor expect to find swivels and nuts in plumbing supply stores and retail establishments. Pl. Comment 12. In disagreeing with Plaintiff's distinctions between the customer expectations and ultimate use of MIPF and gas meter swivels and nuts, Commerce cited the *ITC Report* and the petition. *Final Redetermination* at 15. Specifically, Commerce noted that: (1) the *ITC Report* "specifically states that the ultimate purchasers of MIPF include natural gas utility companies; (2) the petition and *ITC Report* detail a broad customer base that includes "HVAC contractors, OEM, and natural gas and water utility companies" as well as plumbing contractors and home-owners; (3) the petition mentions that MIPF are used in gas lines and piping systems of oil refineries; (4) the *ITC Report* includes the "use of a gas meter swivel and nut by including the criterion that MIPF also connect a pipe to some other apparatus." *Id.* Based on Commerce's heavy reliance on the findings of the *ITC Report*, substantial evidence supports the conclusion that "the expectations of the ultimate purchasers and ultimate use of gas meter swivels and nuts support finding that these products fall within the scope of the [*AD Order*]." *Id.*

With regard to channels of distribution, Plaintiff claims that "gas meter swivels and gas meter nuts move in distribution channels separate and apart from MIPF." Pl. Comment 15; *see* § 351.225(k)(2)(iv). Plaintiff's argument, however, ignores that MIPF and gas meter swivels and

nuts share a common distribution channel, wholesalers and distributors. *Final Redetermination*

at 17. The *ITC Report* noted that MIPF are

> distributed through two channels, wholesale and retail, each of which has
> experienced consolidation in recent years. The malleable fittings sold for
> residential uses and for commercial and industrial uses are the same, and the
> domestic like product and subject imports compete directly in both channels.
> Purchasers reported an increasing overlap in customers between the two channels,
> citing the tendency of large hardware chains to offer malleable fittings to
> contractors, who traditionally purchased from wholesalers rather than retailers.
> The line between the two channels is blurring.

*ITC Report* at 3. Commerce ultimately concluded that

> [t]here seems to be little distinction, if any, between the channels of trade for
> MIPF and gas meter swivels and nuts. The record shows that gas meter swivels
> and nuts are sold through the wholesale/distributor channel, one of the channels of
> trade indicated in the *ITC Report* for MIPF. . . . That gas meter swivels and nuts
> are sold in the wholesale and distributor channel of trade, does not exclude gas
> meter swivels and nuts from the scope of the [*AD Order*] because the ITC
> specifically included this channel of trade in its report as one of the channels of
> trade for MIPF.
>
> The initial investigation included both wholesale and retail channels as possible
> channels of distribution of covered MIPF. Gas meter swivels and nuts are
> distributed through the wholesale channel and therefore, fall within the channels
> of distribution of MIPF covered by the [*AD Order*].

*Final Redetermination* at 17. As gas meter swivels and nuts are sold through the wholesale

channel of trade, a channel through which MIPF are also sold, substantial evidence supports

Commerce's conclusion that gas meter swivels and nuts fall within the scope of the *AD Order*.

Although Commerce admits that gas meter swivels and nuts are advertised and offered

for sale differently than MIPF, it properly found that this difference was not outweighed by the

other factors contained in § 351.225(k)(2). *See* § 351.225(k)(2)(v); *Final Redetermination* at 18.

This distinction does not on its own require a finding that the product falls outside the scope of

the *AD Order*.  *Id.*

## IV. Conclusion

For the foregoing reasons, the court holds that Commerce's conclusions based on the

factors set forth in § 351.225(k)(2) are supported by substantial evidence.  Therefore,

Commerce's scope determination is **AFFIRMED**.


Dated:    April 3, 2008                                            /s/ Judith M. Barzilay
               New York, NY                                        Judith M. Barzilay, Judge