NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**CHANDAN STEEL LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————————

2025-1291

———————————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00540-TCS, Senior Judge Timothy C. Stanceu.

———————————————

Decided: June 4, 2026

———————————————

JEREMY WILLIAM DUTRA, Squire Patton Boggs (US) LLP, Washington, DC, argued for plaintiff-appellant.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TARA K. HOGAN, PATRICIA M. MCCARTHY, BRETT SHUMATE; PAUL HENRY THORNTON, III, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

———————————

Before LOURIE, PROST, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Chandan Steel Limited ("Chandan") appeals from a final decision of the Court of International Trade ("Trade Court") upholding an antidumping order on stainless steel flanges from India by the International Trade Administration, U.S. Department of Commerce ("Commerce"). *See Kisaan Die Tech Priv. Ltd. v. United States*, 665 F. Supp. 3d 1364 (Ct. Int'l Trade 2023) ("*Decision*"). For the reasons below, we *affirm*.

## BACKGROUND

A group of domestic flange producers petitioned Commerce to initiate an antidumping investigation into stainless steel flanges from India. *See Subject: Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Stainless Steel Flanges from India*, 83 ITADOC 13246 (Mar. 28, 2018). In March 2018, Commerce published a Preliminary Determination of Sales at Less Than Fair Value ("LTFV"), stating that stainless steel flanges from India were being, or likely to be, sold in the United States at LTFV. *Id.* This included sales of stainless steel flanges by Chandan and another entity not party to this appeal, known as the "Bebitz/Viraj single entity." *Id.*

In August 2018, Commerce issued a final determination of sales at LTFV of imports of stainless steel flanges from India. *Decision*, 665 F. Supp. 3d at 1368. Commerce then published an antidumping order on stainless steel flanges from India with an adjusted margin of 19.16% against Chandan and 145.25% against the Bebitz/Viraj single entity. *Id.* at 1367–68, 1377 n.9. The antidumping order applied only to flanges with a one-half inch to twenty-four inch nominal pipe size. *Id.* at 1372.

In December 2019, Commerce initiated its first administrative review of the antidumping order for entries of stainless steel flanges from India made during a period of review of March 28, 2018, through September 30, 2019. *Id.* at 1368.

In March 2020, Commerce selected Chandan as the sole mandatory respondent and issued to it an initial antidumping questionnaire. *Id.*; J.A. 83–85. In the initial questionnaire, Commerce asked Chandan to provide all comparison-market sales in the period of review plus those same sales from a "window period" of three months prior to and two months after the period of review. *See Decision*, 665 F. Supp. 3d at 1370–71; J.A. 171. In June 2020, Chandan responded with the requested data for the period of review, but omitted the window period data. *See Decision*, 665 F. Supp. 3d at 1371–72; J.A. 165–66, 170–71; *see also* J.A. 221–33.

In response, Commerce issued a second questionnaire to Chandan in August 2020, asking Chandan to supply the missing information. *See Decision*, 665 F. Supp. 3d at 1372; J.A. 879–92. In September 2020, Chandan responded by including the requested window period data, but omitted data regarding flanges with a nominal pipe size below 1.5 inches. *See Decision*, 665 F. Supp. 3d at 1372.

Commerce then issued a third questionnaire to Chandan in November 2020, asking Chandan to correct the omission of flanges with a nominal pipe size below 1.5 inches. *Decision*, 665 F. Supp. 3d at 1372; J.A. 1645–47. Chandan responded in December 2020 but, as in its first response, omitted the window period sales. *Decision*, 665 F. Supp. 3d at 1372. Chandan thus never submitted window period sales for smaller-size flanges over the course of the three questionnaires. *See id.* at 1376.

In February 2021, Commerce issued its preliminary results. *Stainless Steel Flanges From India: Preliminary*

*Results of Antidumping Duty Administrative Review*; 2018–2019, 86 Fed. Reg. 11,233 (Feb. 24, 2021), J.A. 83–100. There, Commerce determined that use of adverse facts available ("AFA")—*i.e.*, inferences adverse to Chandan's interests when selecting from facts outside the record—was appropriate because Chandan "ha[d] failed to cooperate to the best of its ability" where it, *inter alia*, provided information "so inaccurate as to be unusable" due to its failure to submit complete window period data. *Id.* at 88–89, 95–96. It then assigned to Chandan a preliminary dumping margin of 145.25%. *Id.* at 99.

In August 2021, Commerce published its final results. *Stainless Steel Flanges From India: Final Results of Antidumping Duty Administrative Review: 2018–2019*, 86 Fed. Reg. 47,619 (Aug. 26, 2021) ("*Final Results*"), J.A. 106–53. There, Commerce confirmed both the use of AFA, *id.* at 116, and the preliminary dumping margin, *id.* at 137. Commerce also applied total, rather than partial, AFA against Chandan because because it found that Chandan did not cooperate to the best of its ability and that "the current record information [was] incomplete and [could not] be used without undue difficulties." *Id.* at 116.

Chandan then challenged Commerce's *Final Results* at the Trade Court, which reviewed Commerce's determinations[1] for substantial evidence. *See Decision*, 665 F. Supp.

[1]    Commerce's decision to apply AFA also rested on its additional determinations that Chandan did not correctly report (1) production costs for the foreign like product at a defined control number ("CONNUM") level, thus preventing Commerce from properly conducting its margin analysis, and (2) gross unit price, quantity discounts, other discounts, and duty refunds. *See Decision*, 665 F. Supp. 3d at 1375–76. The Trade Court reasoned that it "need not resolve the disagreements between the parties" on those issues, and focused its analysis on the "omission of sales of

3d at 1368–78. The Trade Court first concluded that substantial evidence supported Commerce's use of total AFA because Chandan did not submit the requested and necessary window period data, even after multiple opportunities for correction. *Id.* at 1374. The Trade Court then concluded that substantial evidence supported Commerce's 145.25% margin selection because Commerce assigned the same rate to the Bebitz/Viraj single entity, another uncooperative respondent in the same underlying investigation. *Id.* at 1377.

Chandan timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

STANDARD OF REVIEW

"We review decisions of the Trade Court *de novo* and apply anew the same standard used by the Trade Court." *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1305–06 (Fed. Cir. 2014). Because "Commerce's special expertise in administering the anti-dumping law entitles its decisions to deference from the courts," "[w]e will uphold Commerce's determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). We also give "great weight" to the Trade Court's "informed opinion[s]". *See SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 840 (Fed. Cir. 2020) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938) (citations omitted).

---

smaller-size flanges occurring in window periods." *Id.* at 1376. Because we resolve the appeal on Chandan's omission of window period data and small-size sales, we do not address these additional determinations.

DISCUSSION

Chandan appeals Commerce's decision to use total AFA and its assignment of a 145.25% margin. Chandan Open. Br. 1. We address each in turn.

I

We first address Commerce's decision to use AFA generally, and then address the decision to use total, rather than partial, AFA.

A

Commerce's authority to consider AFA is the product of two subsections of 19 U.S.C. § 1677e. Subsection (a) requires Commerce to use facts otherwise available when, *e.g.*, an "interested party" either "fails to provide . . . information" requested by Commerce, *id.* § 1677e(a)(2)(B), or "significantly impedes a proceeding" by Commerce, *id.* § 1677e(a)(2)(C). Subsection (b) allows Commerce to "use an inference that is adverse to the interests of" a party that "has failed to cooperate by not acting to the best of its ability to comply with a request for information" "in selecting from among the facts otherwise available." *Id.* § 1677e(b)(1)(A). As we have previously explained, "[t]he focus of subsection (a) is [the] respondent's failure to provide information," while "[t]he focus of subsection (b) is [the] respondent's failure to cooperate to the best of its ability, not its failure to provide requested information." *Nippon Steel*, 337 F.3d at 1381 (emphases omitted).

Accordingly, we first address Commerce's decision to use facts otherwise available under § 1677e(a). Commerce concluded that use of facts otherwise available was required because Chandan both failed to provide the information requested under § 1677e(a)(2)(B) and impeded the proceeding under § 1677e(a)(2)(C) when it, over the course of three different questionnaires, did not submit complete window period sales. *Final Results*, J.A. 113, 116.

We conclude that Commerce's decision was supported by substantial evidence. Chandan both failed to provide the information Commerce requested, *see* 19 U.S.C. § 1677e(a)(2)(B), and "significantly impede[d]" Commerce's proceeding, *see id.* § 1677e(a)(2)(C). Indeed, Chandan's failure to provide the requested window period data, over the course of three questionnaires, is an unambiguous failure to provide requested information under § 1677e(a)(2)(B). *See Mukand*, 767 F.3d at 1306 (use of facts otherwise available justified where antidumping respondent "repeated[ly] fail[ed] to provide the requested . . . data"). Furthermore, Commerce specifically noted that the missing information was "significant," as Chandan's U.S. sales in the period of review months were "potentially missing the best comparison market match." *Final Results*, J.A. 113. That missing data was "so essential to the analysis that they render[ed] the reported data unusable." *Id.* The missing comparison information was thus also a significant impediment to Commerce's investigation under § 1677e(a)(2)(C).

We next address Commerce's decision to use adverse inferences when selecting from the facts otherwise available under § 1677e(b). Commerce concluded that, despite its repeated requests for window sales data, which were in Chandan's possession, Chandan "fail[ed] to correct the deficiencies in that data." *Final Results*, J.A. 131. Commerce reasoned that Chandan did not put forth its "maximum effort to provide Commerce with *full and complete answers to all inquiries*" because the reporting was inattentive and the record unreliable, *e.g.*, for failure to include all flange sizes. *Id.* at 131–32 (emphasis in original) (citing *Nippon Steel*, 337 F.3d at 1382).

Commerce's decision was again supported by substantial evidence. That is, substantial evidence shows that Chandan failed to cooperate to the best of its ability in providing Commerce with the requested information. Chandan's report was "inattentive and unreliable"—

despite multiple opportunities to revise and multiple extensions of time, Chandan omitted relevant data requested by Commerce. *Final Results*, J.A. 132–33. Commerce specifically noted the significance that Chandan was "a large exporter, with prior experience in Commerce proceedings," but still "provided incomplete and unreliable information." *Id.* at 133. Chandan's failure to provide relevant information, especially in light of its familiarity with Commerce proceedings, constitutes substantial evidence which supports the conclusion that Chandan did not "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *See Nippon Steel*, 337 F.3d at 1382.

Chandan's counterarguments are unpersuasive. Chandan argues that Commerce only speculated that the window period data were necessary, and in fact the data submitted were sufficient such that Commerce did not need to use facts otherwise available. *See* Chandan Open. Br. 11–16. But Chandan in essence asks us to substitute our own views for Commerce's views and decide that its submissions, although admittedly deficient, were adequately sufficient. *See id.* We cannot do so. Commerce explained that the requested missing information was "critical" to its inquiry, as without it, it could not "calculate an accurate overall dumping margin" because the "best comparison market match" could have been in the missing data. *Final Results*, J.A. 113.[2] Commerce did not speculate that the window period data were necessary;

---

[2]    Indeed, it is Commerce's standard practice to request window period sales so it can fully evaluate the relevant product sales. *See* J.A. 3925 (standardized questionnaire requesting "all sales of the foreign like product during the three months preceding the earliest month of U.S. sales . . . and the two months after the latest month of U.S. sales").

rather, it told Chandan that the sales information was incomplete and necessary by issuing multiple questionnaires requesting that Chandan provide complete information. J.A. 879–92; J.A. 1645–47. And, as the Trade Court noted, "Commerce must be able to obtain from cooperative respondents, on a timely basis, a reliable comparison market database in order to calculate a weighted average dumping margin." *Decision*, 665 F. Supp. 3d at 1375; *see Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) ("[T]he basic purpose of [§ 1677e] . . . [is to] determine[e] current margins as accurately as possible."). Accordingly, given the substantial evidence noted above and Commerce's "special expertise" in the area, we do not second-guess Commerce's decision to use facts otherwise available and adverse inferences in the case at hand. *See Nippon Steel*, 337 F.3d at 1379.

B

We next address Commerce's decision to use total, rather than partial, AFA. "Commerce applies total AFA when none of the reported data is reliable or usable because, for example, the data contains pervasive and persistent deficiencies that cut across the entire record." *Mukand*, 767 F.3d at 1305. "[P]artial AFA may be appropriate to fill gaps in a record that otherwise contains usable data and is incomplete with respect to only a discrete category of information." *Id.*

Commerce concluded that total AFA was appropriate because "the deficiencies in Chandan's sales and costs data [were] . . . fundamental and pervasive." *Final Results*, J.A. 130; *see id.* at 116 (rejecting partial AFA because "the current record information [was] incomplete and [could not] be used without undue difficulties").

Chandan argues that Commerce erred in applying total AFA because the missing information was a very small percentage of all U.S. sales. Chandan Open. Br. 18–

19. But even if that missing information was a small percentage of sales, we conclude that substantial evidence supports Commerce's decision to use total, rather than partial, AFA. There is no dispute that the window period data for flanges under 1.5 inch nominal pipe diameter were missing. *See id.* at 18. And Commerce explained that such information was "critical to [its] price-to-price margin calculation." *Final Results*, J.A. 113. Furthermore, we have already agreed that Chandan failed to cooperate to the best of its ability despite multiple opportunities, as it submitted "inattentive and unreliable" reporting omitting relevant data requested by Commerce. *Id.* at 132–33. And we have upheld total AFA as "reasonable when a respondent has failed to cooperate to the best of its ability despite a number of opportunities to do so." *See Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*, 50 F.4th 98, 109 (Fed. Cir. 2022) (citation omitted). We continue to do so here in light of "the importance of the information requested, [such that] Commerce was entirely reasonable to expect 'more accurate and responsive answers to [its] questionnaire[s]." *See id.* (quoting *Mukand*, 767 F.3d at 1307).

## II

Lastly, we address Commerce's dumping margin selection. When use of an adverse inference in selecting among the facts otherwise available is appropriate, Commerce may "use any dumping margin from any segment of the proceeding under the applicable antidumping order." 19 U.S.C. § 1677e(d)(1)(B). In selecting from those dumping margins, Commerce has discretion to apply the highest margin available. *Id.* § 1677e(d)(2). Commerce is "not . . . required to corroborate any dumping margin . . . applied in a separate segment of the same proceeding." *Id.* § 1677e(c)(2).

After applying total AFA, Commerce selected a margin of 145.25% for Chandan. *Final Results*, J.A. 136. It

selected that margin by relying on the underlying investigation against Chandan itself, where Commerce assigned the same margin against an uncooperative respondent, the Bebitz/Viraj single entity. *Id.* at 137–138. Furthermore, that margin was "corroborated with Chandan's own product-specific margins." *Id.* at 137 (emphasis omitted).

Chandan argues that Commerce abused its discretion in selecting a "punitive margin." Chandan Open. Br. 20–21. We disagree. While the margin of 145.25% is certainly much higher than the initial margin of 19.16%, Commerce acted within its discretion by assigning to Chandan a dumping margin also given to an uncooperative respondent from the same underlying proceeding. *See* 19 U.S.C. § 1677e(d)(1)(B); *id.* § 1677e(d)(2). There is no abuse of discretion because Commerce acted within its statutory authority by selecting a margin that was (1) applied in the same underlying investigation; and (2) corroborated against Chandan's own product-specific margins.

## CONCLUSION

We have considered Chandan's remaining arguments but find them unpersuasive. For the foregoing reasons, the judgment of the Trade Court is *affirmed*.

## **AFFIRMED**