# United States Court of Appeals for the Federal Circuit

2008-1357

SANGO INTERNATIONAL L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

WARD MANUFACTURING, INC.
and ANVIL INTERNATIONAL, INC.,

Defendants-Appellees.

William D. Outman, II, Baker & McKenzie, LLP, of Washington, DC, argued for plaintiff-appellant.  With him on the brief were Stuart P. Seidel and Kevin J. Sullivan.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States.  With her on the brief were Jeanne E. Davidson, Director, and L. Misha Preheim, Trial Attorney.  Of counsel on the brief was Jonathan Zielinski, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Roger B. Schagrin, Schagrin Associates, of Washington, DC, argued for defendants-appellees Ward Manufacturing, Inc., et al.  With him on the brief was John W. Bohn.

Appealed from:  United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

2008-1357

SANGO INTERNATIONAL L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

WARD MANUFACTURING, INC.
and ANVIL INTERNATIONAL, INC.,

Defendants-Appellees.

Appeal from the United States Court of International Trade in
case no. 05-00145, Judge Judith M. Barzilay.

_____

DECIDED:  June 4, 2009
_____

Before MICHEL, <u>Chief Judge</u>, SCHALL, and MOORE, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

This is a trade case.  The issue is whether gas meter swivels and nuts imported into the United States from the People's Republic of China by Sango International L.P. ("Sango") are within the scope of the antidumping order titled Certain Malleable Iron Pipe Fittings from the People's Republic of China, 68 Fed. Reg. 69,376 (Dep't of

Commerce Dec. 12, 2003) (the "Antidumping Order" or "order").  In Sango International L.P. v. United States, 429 F. Supp. 2d 1356 (Ct. Int'l Trade 2006) ("Sango I"), the United States Court of International Trade upheld the determination of the Department of Commerce ("Commerce") that the swivels and nuts are malleable iron pipe fittings ("MIPFs") within the scope of the Antidumping Order.  In reaching that determination, Commerce concluded that the criteria set forth in 19 C.F.R. § 351.225(k)(1) were dispositive.  Id. at 1359.  In Sango International, L.P. v. United States, 484 F.3d 1371, 1373 (Fed. Cir. 2007) ("Sango II"), we concluded that substantial evidence did not support Commerce's conclusion that the § 351.225(k)(1) criteria were dispositive.  We therefore reversed the decision of the Court of International Trade and remanded the case to the court with the instruction that it, in turn, remand the case to Commerce so that Commerce could consider the criteria set forth in 19 C.F.R. § 351.225(k)(2) in arriving at a scope determination.  Id. at 1382.

On remand, after considering the § 351.225(k)(2) criteria, Commerce again determined that the gas meter swivels and nuts imported by Sango are within the scope of the Antidumping Order.  Sango Int'l L.P. v. United States, No. 05-00145 (Dep't of Commerce Oct. 26, 2007), available at http://ia.ita.doc.gov/remands/07-101.pdf ("Remand Determination").  Sango appealed the Remand Determination to the Court of International Trade, which affirmed Commerce's determination.  Sango Int'l L.P. v. United States, 556 F. Supp. 2d 1327 (Ct. Int'l Trade 2008) ("Sango III").  Sango now appeals the decision of the Court of International Trade in Sango III.  We affirm.

BACKGROUND

I.

Sango is a United States company that insulates gas meter swivels and nuts. Sango II, 484 F.3d at 1375. Gas meter swivels are used to connect a gas meter to a piping system. A swivel has a threaded connection on one end and a shaped flange with a notch on the other end. The shaped flange mates with a gas meter through the use of a meter nut. Because of the flange connection, a gas meter swivel can only connect to a gas meter on its flange end. Typical gas meter swivels are shown below.



A typical gas meter nut is shown below.



The Antidumping Order covers products classified under headings 7307.19.90.30, 7307.19.90.60, and 7307.19.90.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"). 68 Fed. Reg. at 69,377. The Antidumping Order resulted from an antidumping petition from Anvil International, Inc. ("Anvil") and Ward Manufacturing, Inc. ("Ward"), two domestic manufacturers of pipe fittings, and from the investigation that followed the petition.[1] Sango II, 484 F.3d at 1373. During the period

---

[1] In the course of an antidumping investigation, both Commerce and the International Trade Commission ("Commission") make determinations. See 19 U.S.C. §§ 1673b(a)(1), 1673b(b)(1)(A), 1673d(a)(1), 1673d(b)(1). If both Commerce's less-than-fair value inquiry and the Commission's injury inquiry are "answered in the

following the issuance of the order, Sango caused to be imported into the United States from the People's Republic of China gas meter swivels and nuts. Upon entry, United States Customs and Border Protection ("Customs") classified the products under HTSUS heading 7307.19.90.60. That heading covers "Tube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel: Cast fittings: Other: Other Threaded." Customs's classification brought the swivels and nuts within the scope of the Antidumping Order.

After Customs classified the imported swivels and nuts under HTSUS heading 7307.19.90.60 and rejected Sango's request for classification under HTSUS heading 9028.90.00 (parts for and accessories to gas meters), Sango requested a scope ruling from Commerce. Sango II, 484 F.3d at 1376. Pursuant to 19 C.F.R. § 351.225(c)(1), an importer may request from Commerce a ruling as to whether a particular product is within the scope of an antidumping order. The inquiry that Commerce conducts in a scope ruling is governed by the regulation set forth at 19 C.F.R. § 351.225(k), which provides as follows:

> (k)   [I]n considering whether a particular product is included within the scope of an order . . ., the Secretary [of Commerce] will take into account the following:
> (1)   The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the [International Trade] Commission.
> (2)   When the above criteria are not dispositive, the Secretary will further consider:
>       (i)   The physical characteristics of the product;

affirmative," Commerce issues the appropriate antidumping order. Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1089 (Fed. Cir. 2002); see also 19 U.S.C. § 1673d(c)(2).

(ii) The expectations of the ultimate purchasers;

(iii) The ultimate use of the product;

(iv) The channels of trade in which the product is sold; and

(v) The manner in which the product is advertised and displayed.

If Commerce "can determine, based solely upon the application [for a scope ruling] and the descriptions of the merchandise referred to in [§ 351.225(k)(1)], whether a product is included with the scope of an order . . ., [it] will issue a final ruling." 19 C.F.R. § 351.225(d). If Commerce cannot so determine, it will issue a ruling that further inquiry is warranted. Id. § 351.225(e).

On September 13, 2004, Commerce determined that a formal scope inquiry was necessary in order to determine whether the gas meter swivels and nuts imported by Sango are within the scope of the Antidumping Order. See Sango I, 429 F. Supp. 2d at 1358. In the inquiry that followed, Commerce considered the factors listed in 19 C.F.R. § 351.225(k)(1). It thus reviewed the antidumping petition, the initial investigation, its own determinations, and the determinations of the Commission during the investigation. Id. at 1358–59. Finding these sources dispositive, Commerce issued a ruling in which it determined that the swivels and nuts were within the scope of the Antidumping Order. Id. at 1359.

Sango filed suit in the Court of International Trade to challenge Commerce's scope ruling, and Ward and Anvil intervened. The Court of International Trade affirmed Commerce's ruling, holding that the facts presented in the administrative record, when read together "in light of the [o]rder's language, reasonably provide adequate evidence to place gas meter swivels and gas meter nuts within the scope of the [o]rder." Id. at

1362. The court determined that Commerce "did not err by not examining the . . . factors in 19 C.F.R. § 351.225(k)(2)," id. at 1362 n.10, and that its scope ruling was "supported by substantial evidence and in accordance with law," id. at 1362.

In Sango II, we determined that substantial evidence did not support Commerce's conclusion that the sources it reviewed pursuant to § 351.225(k)(1) were dispositive as to whether the imported gas meter swivels and nuts are within the scope of the Antidumping Order. Id. at 1381–82. We therefore reversed the Court of International Trade's decision and remanded with the instruction that Commerce "consider the criteria in § 351.225(k)(2) in arriving at a scope determination." Id. at 1382.

II.

Pursuant to our direction, the Court of International Trade remanded the case to Commerce for it to consider the factors set forth at 19 C.F.R. § 351.225(k)(2). Sango Int'l L.P. v. United States, No. 05-00145, 2007 WL 1888342, at *1 (Ct. Int'l Trade July 2, 2007). For purposes of its scope inquiry, Commerce relied upon, inter alia, the petition filed by Ward and Anvil and the report issued by the Commission in the initial investigation of MIPFs from the People's Republic of China, Investigation No. 731-TA-1021, Publication 3649 (December 2003) ("Commission Report"). Remand Determination, at 24.

In its inquiry, Commerce considered whether, when viewed collectively, the gas meter swivels and nuts imported by Sango are within the scope of the Antidumping Order. Id. at 5. It provided five reasons for this approach: (1) in Sango I, the Court of International Trade treated gas meter swivels and nuts "as a single entity" because they

must bind to each other to function; (2) the Federal Circuit did not indicate in Sango II that gas meter swivels and nuts should be treated separately; (3) in Sango's scope ruling request, the swivels and nuts were treated collectively; (4) "record evidence show[ed] that gas meter nuts cannot be used without gas meter swivels, and that gas meter swivels cannot be used without gas meter nuts;" and (5) Customs categorized gas meter swivels and nuts under a single HTSUS category because they "are never used individually." Id. at 5, 20.

Addressing the first factor in 19 C.F.R. § 351.225(k)(2) (physical characteristics of the product), Commerce found that the physical characteristics of gas meter swivels and nuts support their inclusion within the scope of the Antidumping Order. Id. at 14. Commerce based its finding on the Commission Report, which stated that "malleable fittings are used for connecting . . . a pipe to some other apparatus." Id. at 6–7 (quoting Commission Report, at 5). Commerce also relied on record evidence that gas meter swivels can have female or male threaded ends, which can connect the gas meter swivel to, among other things, a pipe. Id. at 7.

Commerce also found that gas meter swivels and nuts are manufactured to MIPF standards. Id. at 8. The Commission Report stated that "MIPF[s] are produced for the U.S. market to three separate, uniform specifications: a material specification (ASTM), a dimensional specification (ANSI and ASME), and a thread specification." Commission Report, at 7–8. Gas meter swivels meet the MIPF standards, Commerce found, because they are produced to an ASTM material standard, an ANSI dimensional specification, and an ANSI thread specification. Remand Determination, at 10. Recognizing that Sango's gas meter swivels and nuts do not have the dimension

specifications listed in the antidumping petition, Commerce nevertheless determined that failure to meet the "normal" specifications did not exclude them from the scope of the order. Id. at 9–10.

Lastly, Commerce found that gas meter swivels and nuts are not similar to "grooved fittings," id. at 11, which are excluded from the scope of the Antidumping Order. See Antidumping Order, 68 Fed. Reg. at 69,376 ("[T]he products covered are certain [MIPFs], other than grooved fittings . . . ."). During the antidumping investigation, the Commission distinguished grooved fittings from MIPFs: "Grooved fittings . . . are a different type of fitting from threaded or flanged fittings in that a split coupling attaches to a circumferential groove near the end of each piece to be joined. A gasket inside the coupling serves as a seal for the pipe and the coupling." Commission Report, at I-6–I-7 (footnote omitted). Commerce rejected Sango's argument that gas meter swivels are similar to the excluded grooved fittings because both products use a gasket. Commerce did so on the ground that grooved fittings were not excluded from the scope of the Antidumping Order because they have gaskets. Rather, Commerce stated, grooved fittings were excluded from the scope of the order because they could be distinguished from MIPFs "on the basis that they are not threaded and require split couplings (with an internal rubber gasket) which are attached to a circumferential groove in order to seal the connection." Remand Determination, at 24. On the other hand, gas meter swivels mate with a pipe through the use of threading and do not require split couplings, while gas meter nuts also connect through the use of threading. Id. Thus, Commerce determined that the use of a gasket did not exclude gas meter swivels and nuts from the scope of the order.

Addressing the second and third factors in 19 C.F.R. § 351.225(k)(2) (expectations of ultimate purchasers and ultimate use of the product), Commerce found that purchasers' expectations with respect to gas meter swivels and nuts, as well as the items' ultimate uses, favored their inclusion within the scope of the Antidumping Order. The Commission Report, at I-6, II-1, specifically identified natural gas utility companies as potential purchasers of MIPFs. At the same time, it identified installation of gas lines and gas systems in buildings as principal uses of MIPFs. Because gas meter swivels and nuts are sold to natural gas utility companies for use with gas meters, Commerce found that the ultimate purchasers, and the ultimate uses, of gas meter swivels and nuts are the same as for the MIPFs covered by the scope of the order.

Addressing the fourth factor in § 351.225(k)(2) (channels of trade in which the product is sold), Commerce found that the channels of trade for gas meter swivels and nuts also favored their inclusion with the scope of the Antidumping Order. The Commission Report, at II-1, states that "the U.S. market for MIPF is divided into the wholesale/distributor market segment and the retail market segment." Because the record showed that gas meter swivels and nuts are sold through the wholesale distributor channel, Commerce concluded that their distribution is through a channel of trade for MIPFs that is recognized in the Antidumping Order. Remand Determination, at 17.

Finally, Commerce considered the fifth factor in § 351.225(k)(2) (the manner in which the product is advertised and displayed). The record indicated to Commerce that gas meter swivels and nuts are advertised separately from MIPFs covered by the order. Id. at 18. Commerce determined, however, that the manner in which gas meter swivels

and nuts are advertised alone was not enough to determine that swivels and nuts fall outside the scope of the order. Id. Accordingly, and consistent with its original ruling, Commerce concluded that gas meter swivels and nuts are within the scope of the Antidumping Order. Id.

The Court of International Trade affirmed Commerce's decision. Sango III, 556 F. Supp. 2d at 1338. The court concluded that a collective evaluation of gas meter swivels and nuts was appropriate, id. at 1333, and that the evidence in the record pertaining to the factors set forth in § 351.225(k)(2) supported Commerce's determination that Sango's gas meter swivels and nuts are within the scope of the Antidumping Order, id. at 1338.

DISCUSSION

I.

We have jurisdiction over Sango's appeal pursuant to 28 U.S.C. § 1295(a)(5). On appeal, we apply "anew" the standard of review applied by the Court of International Trade to Commerce's administrative determination. Wheatland Tube Co v. United States, 161 F.3d 1365, 1369 (Fed. Cir. 1998). We uphold a scope ruling unless we find it to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The substantial evidence inquiry takes into account the entire record, which includes evidence that supports and detracts from the conclusion reached. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006).

II.

Sango makes two arguments on appeal. First, it contends that Commerce's decision to collectively evaluate gas meter swivels and gas meter nuts is not supported by substantial evidence. Sango's Br. 23. The record reflects, Sango says, that gas meter swivels are packaged, sold, and advertised separately from gas meter nuts. Id. at 25–26. According to Sango, the record also reflects that Sango, in its request to Customs for classification of the swivels and nuts under HTSUS 9028.90.00, treated the swivels and nuts as separate articles. Id. at 25. Sango also notes that, in Sango II, this court did not treat the swivel and nut as one unit. Id. at 27. Finally, Sango argues that the mutual functional dependence of gas meter swivels and nuts does not require Commerce to consider the two articles as a single entity. Id. at 27–28.

We hold that substantial evidence supports Commerce's decision to evaluate the gas meter swivels and nuts collectively. Commerce stated, and we agree, that collective treatment of the swivels and nuts was reasonable because gas meter nuts cannot be used without gas meter swivels, and gas meter swivels cannot be used without gas meter nuts. Remand Determination, at 5, 20. Sango does not dispute this fact. Although mutual functional dependence is logically imperfect and may not always allow for collective treatment by Commerce, in this case we cannot say that it does not provide substantial evidence for collective treatment. Customs also categorized gas meter nuts and swivels under a single HTSUS heading. See Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1386 (Fed. Cir. 2005) ("[W]e . . . agree that it is permissible to refer to Customs rulings on the HTS to find precision in the reach of the scope order.").

On appeal, Sango does not contend that gas meter swivels and nuts can be used individually. Rather, it argues that gas meter swivels and nuts should be evaluated individually because they are packaged, sold, and advertised separately. We are not persuaded by this argument for two reasons. First, Commerce is not required as a matter of law to consider components separately simply because they are packaged, sold, and advertised separately. Second, although Sango is correct that much of the evidence indicates that gas meter swivels and nuts are packaged, sold, and advertised separately, there are exceptions. This somewhat equivocal record does not provide sufficient ground to hold that Commerce lacked substantial evidence for its collective treatment of gas meter swivels and nuts.

## III.

Sango's second argument on appeal is that substantial evidence does not support Commerce's determination that the gas meter swivels and nuts imported by Sango are within the scope of the Antidumping Order. Sango's Br. 21. According to Sango, Commerce misapplied the criteria set forth at 19 C.F.R. § 351.225(k)(2). Turning to the physical characteristics of gas meter swivels and nuts, Sango argues that, in order to be within the scope of the order, an article must (1) directly connect to pipe, id. at 28; (2) meet specific National Pipe Thread ("NPT") specifications, id. at 31; and (3) make a connection without the use of a gasket, id. at 32. According to Sango, the record reflects that, unlike MIPFs, (1) gas meter swivels and nuts do not directly connect to pipe, id. at 28–31; (2) gas meter nuts do not meet NPT specifications and gas meter swivels fail to meet NPT specifications on certain connections, id. at 31–32; and (3) gas meter nuts require use of a gasket, id. at 32–34.

Sango also argues that expectations of ultimate purchasers with respect to gas meter swivels and nuts, as well as the ultimate uses of gas meter swivels and nuts, differ from the expectations and uses for MIPFs within the scope of the Antidumping Order. According to Sango, consumers expect MIPFs to be suitable for a wide number of applications, so that one MIPF can be substituted for another. Id. at 34–36. In contrast, Sango asserts, consumers expect gas meter swivels and nuts to make connections specifically with gas meters and not to have the ability to be substituted for another MIPF. Id. As for channels of trade, Sango argues that MIPFs must be sold through both wholesale and retail channels of trade, and, since the record reflects that gas meter swivels and nuts are only sold via the wholesale channel of trade, they cannot be within the scope of the order. Id. at 34, 38. Sango concludes that the record evidence pertaining to § 351.225(k)(2)(i)–(iv), when combined with Commerce's finding that gas meter swivels and nuts are advertised and offered for sale differently than MIPFs, does not support Commerce's determination that gas meter swivels and nuts are covered by the Antidumping Order. Id. at 39.

We have set forth above at some length Commerce's consideration and application of the § 351.255(k)(2) cirteria. We see no error in Commerce's scope ruling based on those criteria. Turning to § 351.225(k)(2)(i) (physical characteristics of the product), we are not persuaded by Sango's attempt to distinguish gas meter swivels and nuts from MIPFs based on their physical characteristics. In our view, the record does not support Sango's claim that, in order to be covered by the Antidumping Order, gas meter swivels must connect directly to pipe. To the contrary, the Commission Report reveals that the scope of the order extends to MIPFs that connect a pipe or a

pipe fitting to an apparatus, while the record indicates that gas meter swivels and nuts, collectively, can connect a pipe to a gas meter.[2] Remand Determination, at 7.

Contrary to Sango's argument, we also think that substantial evidence supports Commerce's determination that gas meter swivels and nuts meet the threading specifications required of MIPFs within the scope of the order. The record evidence indicates that gas meter swivels and nuts meet the specifications listed in the Commission Report. See Remand Determination, at 10 (discussing the manufacturing specifications for gas meter swivels and nuts described in a product information package from Southwest Gas Corporation and in a price schedule from Ward). Commerce noted the petition's list of specifications to which MIPFs will "normally" be produced, but reasonably concluded that the list was not exhaustive. Id. at 10. The record supports Commerce's determination that the physical characteristics of gas meter swivels and nuts are shared by MIPFs included within the scope of the order.

We also find unconvincing Sango's argument that the use of a gasket to make a swivel-meter connection has the effect of excluding gas meter swivels and nuts from the scope of the Antidumping Order. As noted above, Commerce explained in the Remand Determination why it believed that the fact that gas meter swivels, like excluded grooved fittings, have gaskets does not serve to put swivels outside the scope of the order. While the Antidumping Order, 68 Fed. Reg. at 69,377, excludes from its scope grooved fittings, which have gaskets, Commerce pointed out that neither the Antidumping Order nor the Commission Report distinguishes MIPFs from non-MIPFs on account of use of a

_____

2   The Commission Report, at 5, states: "Malleable fittings are used for connecting the bores of two or more pipes or tubes, connecting a pipe to some other apparatus, changing the direction of fluid flow, or closing a pipe."

gasket. The exclusion of grooved fittings from the scope of the order does not necessitate the exclusion of all fittings that use a gasket.[3] Nor does the use of a gasket render gas meter swivels and nuts grooved fittings. Commerce reasonably concluded that "the comparison between the use of a gasket by the gas meter swivel and grooved fittings is dissimilar and gas meter swivels and nuts should not be excluded from the [Antidumping Order] on this basis." Remand Determination, at 24.

Turning to § 351.225(k)(2)(ii–iii) (expectations of ultimate purchasers and ultimate use of the product), we are not persuaded by Sango's attempt to distinguish gas meter swivels and nuts from MIPFs based on consumer expectations and ultimate uses. As seen, the Commission Report states that ultimate purchasers of MIPFs include natural gas utility companies and that one function of MIPFs is to connect a pipe to some other apparatus. Commission Report, at I-6, II-1. Sango does not dispute that gas meter swivels and nuts are sold to gas utility companies for use with gas meters. The record therefore supports Commerce's finding that consumer expectations with respect to gas meter swivels and nuts, as well as the uses for gas meter swivels and nuts, are the same as the expectations and uses for MIPFs. Remand Determination, at 15.

Turning to § 351.225(k)(2)(iv) (channels of trade in which the product is sold), we think substantial evidence supports Commerce's finding that MIPFs and gas meter

---

[3] We note that the record contains a portion of a transcript from a November 22, 2002 Commission hearing in which Tom Gleason, Ward's Vice-President of Marketing and Sales, stated that "all grooved products require gaskets," and that "[w]hat we have in our scope is all products that don't require a gasket." This testimony does not persuade us to limit the scope of the Antidumping Order because there is no evidence in the record that the Commission chose to adhere to this testimony and exclude all fittings that use gaskets.

swivels and nuts share a common channel of trade, wholesalers and distributors. The Commission Report, at II-1, specifically notes that MIPFs are distributed through wholesale distribution, and Sango acknowledges that gas meter swivels and nuts are sold in the wholesale channel of trade. Commerce therefore reasonably concluded that the application of the channel of trade factor supported the inclusion of gas meter swivels and nuts within the scope of the order.

Since Commerce, in addressing § 351.225(k)(2)(v) (manner in which the product is advertised and displayed), found that gas meter swivels and nuts are advertised and offered for sale differently than MIPF, we are left to decide whether Commerce reasonably concluded that this factor was outweighed by the other four factors contained in § 351.225(k)(2). We believe it did. As explained by Commerce, "[d]ifferences in advertising are not dispositive with respect to whether gas meter swivels and nuts are within the scope of the [Antidumping Order], because the manner in which gas meter swivels and nuts are displayed is only one of the five criteria being examined." Remand Determination, at 18.

## CONCLUSION

For the foregoing reasons, we hold that substantial evidence supports Commerce's scope determination based upon its consideration of the factors set forth at 19 C.F.R. § 351.225(k)(2). We therefore affirm the judgment of the Court of International Trade upholding Commerce's determination that gas meter swivels and gas meter nuts are within the scope of the Antidumping Order.

## AFFIRMED

COSTS

Each party shall bear its own costs.