# United States Court of Appeals for the Federal Circuit

---

**SWIFF-TRAIN CO., METROPOLITAN HARDWOOD FLOORS, INC., BR CUSTOM SURFACE, REAL WOOD FLOORS, LLC, GALLEHER CORP., DPR INTERNATIONAL, LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**THE COALITION FOR AMERICAN HARDWOOD PARITY,**
*Defendant-Appellee*

---

2014-1814

---

Appeal from the United States Court of International Trade in No. 12-cv-00010-RKM, Senior Judge R. Kenton Musgrave.

---

Decided: July 13, 2015

---

WILLIAM E. PERRY, Dorsey & Whitney LLP, Seattle, WA, argued for plaintiffs-appellants. Also represented by EMILY LAWSON.

DAVID FISHBERG, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee United States. Also represented by DOMINIC L. BIANCHI, ANDREA C. CASSON, MARY JANE ALVES.

JEFFREY STEVEN LEVIN, Levin Trade Law PC, Bethesda, MD, for defendant-appellee The Coalition for American Hardwood Parity.

———————————

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Swiff-Train Co., Metropolitan Hardwood Floors, Inc., BR Custom Surface, Real Wood Floors, LLC, Galleher Corp., and DPR International, LLC (collectively, "Appellants" or "U.S. Importers") appeal the opinion and final judgment of the United States Court of International Trade ("CIT") affirming the United States International Trade Commission's (the "Commission") finding of material injury to a domestic industry. *See Swiff-Train Co. v. United States* (*Swiff-Train II*), 999 F. Supp. 2d 1334 (Ct. Int'l Trade 2014); *Swiff-Train Co. v. United States* (*Swiff-Train I*), 904 F. Supp. 2d 1336 (Ct. Int'l Trade 2013). Because the Commission's remand determination was supported by substantial evidence and is in accordance with law, this court affirms.

BACKGROUND

I. Facts and Proceedings

After receiving antidumping and countervailing duty petitions from Appellee the Coalition for American Hard-

wood Parity (the "Coalition"),[1] an ad hoc association of United States manufacturers of multilayered wood flooring, the Commission initiated investigations of imports of multilayered wood flooring ("subject imports") from the People's Republic of China ("China") on October 21, 2010. *See Multilayered Wood Flooring from China*, Inv. Nos. 701-TA-476, 731-TA-1179 (Int'l Trade Comm'n Nov. 2011) (Final), Pub. 4278, at 1 (J.A. 492–584) ("*Initial Views*"); *Multilayered Wood Flooring from China*, 76 Fed. Reg. 76,435 (Int'l Trade Comm'n Dec. 7, 2011) (final affirmative injury determination). Appellants, United States importers of multilayered wood flooring from China, participated in the investigations.

Pursuant to 19 U.S.C. §§ 1671d(b) and 1673d(b) (2006), in the investigation the Commission sought to determine whether the domestic multilayered wood flooring industry was materially injured by reason of less-than-fair-value and subsidized subject imports from China. *Initial Views* at 1. Upon completing its investigation in November 2011, the Commission made an affirmative injury determination. *Id.* at 36.

U.S. Importers challenged the Commission's final affirmative injury decision before the CIT. In *Swiff-Train I*, the CIT remanded four issues to the Commission, including "whether the subject imports were a 'but-for' cause of material injury to the domestic industry," and affirmed all other aspects of the Commission's determinations. *Swiff-Train I*, 904 F. Supp. 2d at 1338. Specifically, as to causation, the CIT found the Commission's determinations to be "unsupported by substantial evidence because the Commission failed to adequately consider the effect that

---

[1] The Coalition "joins in and adopts by reference the response brief" of the United States. Coalition's Br. 2. Accordingly, "Appellees" in this opinion refers to both the United States and the Coalition.

the severe disruption of the home building and remodeling industries had on the domestic like product industry." *Id.* at 1346. Therefore, the CIT directed the Commission "to ensure that the subject imports, as compared to other economic factors affecting the domestic industry, were not a but-for cause of the injury." *Id.* at 1347. The CIT, however, "disagree[d] [with U.S. Importers] that the statute in conjunction with our appellate precedent require us to restrict application of the 'but-for' causation standard to a particular factual scenario, or a particular aspect of the material injury inquiry." *Id.* Instead, the CIT found, "the statutory 'by reason of' standard clearly applies to the overall causation analysis to be performed by the Commission." *Id.*

On remand, the Commission reopened the record and solicited written comments from Appellants and other parties. On September 30, 2013, the Commission submitted its determinations on remand to the CIT, wherein it continued to find the domestic industry was materially injured by reason of subject imports. *See Multilayered Wood Flooring from China (Remand)*, Inv. Nos. 701-TA-476, 731-TA-1179, Pub. 4430 (Int'l Trade Comm'n Sept. 30, 2013) (J.A. 942–86) ("*Remand Views*"). Specifically, the Commission concluded after an extensive analysis, "but for the unfairly traded subject . . . imports from China in the U.S. market during the [period of investigation], the domestic industry would have been materially better off both during the housing market collapse and during the developing recovery that followed." *Id.* at 47.

On December 20, 2013, U.S. Importers submitted their objections to the *Remand Views* to the CIT, arguing the *Remand Views* did not comply with the court's remand order in *Swiff-Train I* to apply a "but-for" causation standard. On July 16, 2014, in *Swiff-Train II*, the CIT sustained the material injury determination, finding the *Remand Views* complied with its remand order. *Swiff-Train II*, 999 F. Supp. 2d at 1340. The CIT found the

Commission "properly framed the legal basis upon which to determine whether subject imports are the cause-in-fact of material injury, to wit, 'notwithstanding any injury from other factors,'" which the CIT characterized as "an obvious expression of a 'but for' cause-in-fact inquiry." *Id.* at 1344.

Appellants appealed to this court on September 8, 2014. This court has jurisdiction under 28 U.S.C. § 1295(a)(5) (2012).

## DISCUSSION

### I. Standard of Review

This court reviews decisions of the CIT de novo, "apply[ing] anew the same standard used by the [CIT]." *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380 (Fed. Cir. 2008) (internal quotation marks and citation omitted). Under that standard, this court must uphold the Commission's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2006); *see also Gerald Metals, Inc. v. United States*, 132 F.3d 716, 719 (Fed. Cir. 1997) ("This court duplicates the [CIT's] review of the Commission's determinations, evaluating whether they are 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" (quoting 19 U.S.C. § 1516a(b)(1)(B)(i))). "Although such review amounts to repeating the work of the [CIT], we have noted that 'this court will not ignore the informed opinion of the [CIT].'" *Diamond Sawblades Mfrs. Coal. v. United States*, 612 F.3d 1348, 1356 (Fed. Cir. 2010) (quoting *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 983 (Fed. Cir. 1994) ("Although reviewing anew the [Commission's] determination, this court will not ignore the informed opinion of the [CIT]. That court reviewed the record in considerable detail. Its opinion deserves due respect.")); *Cleo Inc. v. United States*, 501 F.3d 1291, 1296

(Fed. Cir. 2007) ("When performing a substantial evidence review, . . . we give great weight to the informed opinion of the [CIT]. Indeed, it is nearly always the starting point of our analysis." (internal quotation marks and citation omitted)).

Substantial evidence is defined as "more than a mere scintilla," as well as evidence that a "reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). This court's review is limited to the record before the Commission in the particular proceeding at issue and includes all evidence that supports and detracts from the Commission's conclusion. *Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1362 (Fed. Cir. 2009). An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

## II. Legal Framework

The United States imposes duties on foreign-produced goods sold in the United States at less-than-fair value ("antidumping duties"), 19 U.S.C. § 1673(1), or that benefit from subsidies provided by foreign governments ("countervailing duties"), *id.* § 1671(a)(1). Commerce is responsible for investigating whether there have been, or are likely to be, sales at less-than-fair value or whether a countervailable subsidy has been provided, while the Commission determines whether "an industry in the United States . . . is materially injured, or . . . is threatened with material injury . . . *by reason of* imports" of the subject merchandise. *Id.* §§ 1671d(a)(1), (b)(1), 1673d(a)(1), (b)(1) (emphasis added). "If both inquiries are answered in the affirmative, Commerce issues the relevant antidumping and countervailing duty orders." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002).

An affirmative material injury determination by the Commission "requires both (1) present material injury and (2) a finding that the material injury is 'by reason of' the subject imports." *Gerald Metals*, 132 F.3d at 719. Section 1677(7)(A) defines "material injury" as a "harm which is not inconsequential, immaterial, or unimportant." 19 U.S.C. § 1677(7)(A). When determining whether imports have caused material injury to a domestic industry, the Commission evaluates:

(I) the *volume* of imports of the merchandise,

(II) the effect of imports of that merchandise on *prices* in the United States for domestic like products, and

(III) the *impact* of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States.

*Id.* § 1677(7)(B)(i) (emphases added); *see also id.* § 1677(7)(C)(i)–(iii). The Commission "may [also] consider such other economic factors as are relevant to the determination." *Id.* § 1677(7)(B)(ii). No single factor is dispositive and the Commission considers all relevant factors "within the context of the business cycle and conditions of competition that are distinctive to the affected industry." *Id.* § 1677(7)(C)(iii).

Beyond enumerating these factors (i.e., volume of subject imports, their price effects, and their impact on the domestic industry), the statute does not define the phrase "by reason of." *See Mittal Steel*, 542 F.3d at 878. This court has specified, however, that "[i]n reviewing an affirmative injury determination for substantial evidence, this court requires evidence in the record 'to show that the harm occurred by reason of the [subject] imports, not by reason of a minimal or tangential contribution to material

harm caused by [subject] goods.'" *Id.* at 873 (quoting *Gerald Metals*, 132 F.3d at 722).

### III. The Commission's Causation Analysis Was in Accordance with Law

Appellants argue the Commission erred in failing to conduct a counterfactual analysis to determine whether the subject imports were a "but-for" cause of material injury to the domestic industry. Under the proper but-for test, Appellants contend, the Commission is required "to conduct an analysis comparing the actual state of the domestic industry during the Period of Investigation . . . with what the state of the industry would have been absent the subject imports." Appellants' Br. 27. Appellants assert such an inquiry is required by the words of the statute: "A 'but-for,' counterfactual analysis is the minimum requirement for a finding of causation where a statute is phrased in terms of an injury 'by reason of' a particular intervention, as the antidumping and countervailing duty statutes are defined in this case." *Id.* at 16. This is because, Appellants argue, "[t]he words 'by reason of' are pervasively understood to mean 'on account of' or 'because of.' This type of statutory language fundamentally requires proof that the subject imports were a 'but-for' cause of material injury." *Id.* at 20–21; *see also id.* at 21 ("[T]he statutes impose a causation standard that requires the Commission to ask whether the domestic [multilayered wood flooring] industry would be in the same position today if the Chinese imports were not in the marketplace during the [period of investigation].").

In support, U.S. Importers point to United States Supreme Court cases from various legal contexts that discuss the statutory use of the terms "because of" and "by reason of." They argue the "Court has repeatedly recognized, across multiple legal contexts, that this type of statutory language requires 'but-for' causation." *Id.* at 22–23. Appellants also claim support from Justice Ken-

nedy's dissent in *Price Waterhouse v. Hopkins*, where he wrote: "Any standard less than but-for . . . simply represents a decision to impose liability without causation." *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 282 (1989) (Kennedy, J., dissenting), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 107(a), 105 Stat. 1075 (codified at 42 U.S.C. § 2000e-2(m)) (dispensing with but-for causality), *as recognized in Burrage v. United States*, 134 S. Ct. 881, 889 n.4 (2014).

Appellants also contend a but-for test is required by this court's cases. Citing *Gerald Metals* and *Bratsk Aluminium Smelter v. United States*, U.S. Importers argue "this Court has expressly held that 'the anti-dumping statute mandates a showing of causal . . . connection between the [less-than-fair-value] goods and the material injury.'" Appellants' Br. 24–25 (quoting *Gerald Metals*, 132 F.3d at 720) (citing *Bratsk Aluminium Smelter v. United States*, 444 F.3d 1369, 1373 (Fed. Cir. 2006)). Appellants also cite this court's decision in *Mittal Steel*, where we stated "we regard the inquiry into 'but for' causation as a proper part of the Commission's responsibility to determine whether the injury to the domestic industry is 'by reason of' the subject imports." *Mittal Steel*, 542 F.3d at 877. Appellants argue this court in *Mittal Steel* articulated the proper analysis, based on *Price Waterhouse*, which the Commission failed to employ here:

> "But for causation is a hypothetical construct. In determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether even if that factor had been absent, the event nevertheless would have transpired in the same way."

*Id.* at 876 (quoting *Price Waterhouse*, 490 U.S. at 240).

Finally, U.S. Importers point to several older Commission investigations where the Commission employed certain economic models ("CADIC" and "COMPAS") to perform a counterfactual "but-for" determination. Appellants argue the Commission previously used these economic models to construct a hypothetical state of the industry, as they argue is required by *Mittal Steel.* Appellants acknowledge the Commission ceased using these models in the early 2000s, but argue the Commission "must still establish that the imports are a 'but-for' 'legal cause' of injury to the U.S. industry." Appellants' Br. 33; *see also id.* ("[C]ertain Commissioners apparently do not favor rigorous but-for methodologies, such as CADIC and then its mathematically identical successor, COMPAS, as they threaten the Commissioners' discretion to make an unfettered injury decision, unfettered of the statutory requirement to undertake a counterfactual analysis based on record evidence."). While Appellants acknowledge this court does not require use of any particular model or methodology, they contend the former use of such models supports their argument that a strict counterfactual analysis is required by statute.

The Commission performed a proper but-for analysis in making its affirmative injury determination and fully complied with applicable law. Specifically, the Commission considered the statutory factors of the volume of subject imports, their price effects, and their impact on the domestic industry, 19 U.S.C. § 1677(7)(B)(i), and found substantial record evidence established a causal link between subject imports and material injury to the domestic industry, *Remand Views* at 47. The Commission considered the role of other factors in the market that may have injured the domestic industry, and concluded these factors did not break the causal link between subject imports and material injury to the domestic industry. *Remand Views* at 42–47. Based on these findings, the Commission concluded:

> [B]ut for the unfairly traded subject . . . imports from China in the U.S. market during the [period of investigation], the domestic industry would have been materially better off both during the housing market collapse and during the developing recovery that followed. On remand, we therefore reaffirm the conclusion that subject imports of [multilayered wood flooring] from China had a significant adverse impact on the domestic industry during the [period of investigation].

*Id.* at 47. Having established cause-in-fact by identifying the injurious effect of subject imports on the domestic industry using the statutory factors, and then ensuring injury was not caused by factors other than subject imports, the Commission also demonstrated that subject imports were a but-for cause of injury to the domestic industry. *See id.* The Commission was not then required to conduct an explicit counterfactual test to determine the hypothetical condition of the domestic industry but for the subject imports where the actual data on the record enabled the Commission to conduct a reasonable causation analysis.

Furthermore, Appellants point to no support for their proposition that the Commission can only satisfy the "by reason of" language in the statute by conducting a counterfactual analysis. Appellants' Br. 34–35. Indeed, in *Bratsk*, this court noted "the Commission uses different methodologies in determining whether the domestic injury was 'by reason of' the [less-than-fair-value] imports," and "the antidumping statute 'on its face compels no [ ] uniform methodology, and we are not persuaded that we should create one, even were we so empowered.'" *Bratsk*, 444 F.3d at 1373 n.3 (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)).

As to Appellants' citations to various tort and criminal law statutes containing the terms "because of" or "by

reason of," which the Supreme Court has stated require but-for causation, Appellants are correct the Commission is required to demonstrate causation under the trade statutes. There is no support, however, for U.S. Importers' assertion that a strict counterfactual analysis is required. As Appellees point out, "where Congress has required a counterfactual analysis by the Commission to satisfy a statutory threshold under the antidumping and countervailing duty law, it has explicitly told the Commission to perform that analysis." United States' Br. 41–42. This is evident from the Statement of Administrative Action ("SAA") of the Uruguay Round Agreements Act, which states:

> The likelihood of continuation or recurrence of material injury standard is not the same as the standards for material injury and threat of material injury, although it contains some of the same elements. Under the material injury standard, the Commission determines whether there is current material injury by reason of imports of subject merchandise. Under the threat of material injury standard, the Commission decides whether injury is imminent, given the status quo. *By comparison*, under the likelihood standard, *the Commission will engage in a counter-factual analysis*: it must decide the likely impact in the reasonably foreseeable future of an important change in the status quo—the revocation or termination of a proceeding and the elimination of its restraining effects on volumes and prices of imports.

SAA, H.R. Rep. No. 103-316, vol. 1, at 883–84 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4209. (emphases added).

Furthermore, nowhere in the three related cases relied upon by Appellants—*Mittal Steel*, *Bratsk*, and *Gerald Metals*—did this court rule the "by reason of" standard

can only be met by an explicit counterfactual analysis.  By contrast, in *Mittal Steel* this court stated, "[i]n making its determination as to whether the harm to the domestic injury occurred 'by reason of' the [less-than-fair-value] imports, the Commission [is] required to 'examine the relevant data and articulate a satisfactory explanation for its action.'"  542 F.3d at 873 (citation omitted).  Then, "[i]n reviewing an affirmative injury determination for substantial evidence, this court requires evidence in the record 'to show that the harm occurred by reason of the [less-than-fair-value] imports, not by reason of a minimal or tangential contribution to material harm caused by [less-than-fair-value] goods.'"  *Id.* (quoting *Gerald Metals*, 132 F.3d at 722).

Appellants are correct, however, that in *Mittal Steel*, this court also stated that "[a]n important element of the causation inquiry—not necessarily dispositive, but important—is whether the subject imports are the 'but for' cause of the injury to the domestic industry."  *Id.* at 876; *see also id.* at 877 ("[W]e regard the inquiry into 'but for' causation as a proper part of the Commission's responsibility to determine whether the injury to the domestic industry is 'by reason of' the subject imports.").  However, this court further clarified:

> In this context, that principle requires the finder of fact to ask whether conditions would have been different for the domestic industry in the absence of dumping.  Thus, *Bratsk* (like *Gerald Metals*) directs that *in cases involving commodity products in which non-[less-than-fair-value] imported goods are present in the market, the Commission must give consideration to the issue of "but for" causation* by considering whether the domestic industry would have been better off if the dumped goods had been absent from the market.

*Id.* at 876 (emphasis added).  Appellants have not shown this statement prescribes a fixed methodology that applies in this case.  Indeed, in *Mittal Steel*, this court also noted, "[w]hile the Commission may not enter an affirmative determination unless it finds that a domestic industry is materially injured 'by reason of' subject imports, *the Commission is not required to follow a single methodology for making that determination.*"[2]  *Id.* at 873 (emphasis added); *see also id.* (The Commission has "broad discretion with respect to its choice of methodology.").  Therefore, this court concluded:

> To say that an affirmative determination must be based on evidence that the injury to the domestic industry is "by reason of" subject imports does not require the Commission to address the causation issue in any particular way . . . . The Commission is simply required to give full consideration to the causation issue and to provide a meaningful explanation of its conclusions.

*Id.* at 878 (internal citation omitted).  The Commission's explanation was meaningful in this case.

In addition, this court has stated the "'Commission need not isolate the injury caused by other factors from

---

[2]    For this reason, Appellants' arguments regarding CADIC and COMPAS are also unavailing.  Indeed, as Appellees point out, the Commission has explained it prefers to rely on actual empirical data in the record, rather than conclusions based on a theoretical economic model.  *See* United States' Br. 43–44 (citing *Circular Seamless Stainless Steel Hollow Products from Japan,* Inv. No. 731–TA–859 (Remand), USITC Pub. 3475, at 7 (Dec. 2001) (stating empirical record data is more useful than conclusions based on the results of the COMPAS model)).

injury caused by unfair imports,'" *Bratsk*, 444 F.3d at 1373 (quoting SAA at 851), nor demonstrate the subject imports are the "principal" cause of injury, *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003) ("[T]he 'dumping' need not be the sole or principal cause of injury. As long as its effects are not merely incidental, tangential or trivial, the foreign product sold at less than fair value meets the causation requirement."). Appellants' reliance on our case law does not support their proposition that a strict counterfactual analysis is required to demonstrate material injury "by reason of" subject imports. As the CIT stated, "[t]he Commission need not state for the record the precise contours of the hypothetical counterfactual 'but for' state, so long as its ultimate conclusions, on causation 'by reason of' subject imports from the evidence of record, are discernable and reasonable." *Swiff-Train II*, 999 F. Supp. 2d at 1352.

Accordingly, the Commission's causation analysis was in accordance with law.

## IV. The Commission Did Not Improperly Rely on Its Discretion in Its Causation Analysis

Next, Appellants argue the Commission erred in asserting that by statute the proper test for causation falls within its discretion. Appellants' Br. 17. In the *Remand Views*, the Commission stated, "since the statute does not define the phrase 'by reason of,' the question of whether the injury to the domestic industry by subject imports satisfies the material injury threshold notwithstanding any injury from other factors falls within the Commission's discretion and is reviewable under the substantial-evidence standard." *Remand Views* at 33 n.142. Appellants claim this interpretation was tantamount to the Commission taking "the position that it is not required to apply any particular causation standard so long as its finding is supported by substantial evidence." Appellants' Br. 43. Appellants continue:

> In effect, the Commission appears to argue that it is unique and the U.S. Antidumping and Countervailing Duty law are unique and not subject to judicial interpretation and fundamental statutory construction as set forth by this Court and the Supreme Court. Apparently "trade speak," a language used only within the four walls of the Commission building, trumps ordinary statutory construction and thus the Commission can simply ignore Supreme Court precedent.

*Id.*

The court declines to entertain Appellants' unjustified hyperbole. The Commission did not improperly exercise its discretion in making its causation analysis; rather, it adhered to the statutory requirements as interpreted by the SAA, the legislative history, and this court's cases discussing the statutory causation standard. As to its discretion, the Commission stated:

> We understand our burden under [*Mittal Steel*] is to identify substantial evidence in the record demonstrating the domestic industry is materially injured by reason of subject imports notwithstanding any record evidence of other factors that might also be having adverse effects on the industry at the same time. While the type of analysis posited by [Appellants] might be one way to conduct such an inquiry, the Federal Circuit has been clear in holding that the Commission has discretion in choosing its methodology for assessing causation and need not follow any rigid formula, such as that proposed by [Appellants]. As the Commission noted, the Federal Circuit, in addressing the causation standard of the statute, concluded that "[a]s long as its effects are not merely incidental, tangential, or trivial, the foreign product sold at less than fair value meets the causation require-

ment." *Nippon*, 345 F.3d at 1384. This was further ratified in *Mittal* [*Steel*], 542 F.3d at 873, where the Federal Circuit, quoting *Gerald Metals* . . . , stated that "this court requires evidence in the record 'to show that the harm occurred by reason of the [less-than-fair-value] imports, not by reason of a minimal or tangential contribution to material harm caused by [less-than-fair-value] goods.'"; *see also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1357 (Fed. Cir. 2006); *Taiwan Semiconductor Indus.* [*Ass'n*] *v. Int'l Trade Comm'n*, 266 F.3d 1339, 1345 (Fed. Cir. 2001). Congress has delegated this finding to the Commission because of the agency's institutional expertise in resolving injury issues. *Mittal* [*Steel*], 542 F.3d at 873; *Nippon*, 458 F.3d at 1350 (citing [*U.S. Steel Grp.*, 96 F.3d at 1357]); S. Rep. 96-249 at 75 ("The determination of the [Commission] with respect to causation is . . . complex and difficult, and is a matter for the judgment of the [Commission].")).

*Remand Views* at 33 n.142.

This statement does not amount to the Commission improperly deferring to its own discretion in place of fulfilling the statutory "by reason of" standard; rather, the Commission correctly stated it has discretion to choose an appropriate methodology for analyzing causation. While there may be instances where a strict counterfactual but-for analysis is necessary, in *Mittal Steel* this court stated the "by reason of" standard "does not require the Commission to address the causation issue in any particular way . . . . The Commission is simply required to give full consideration to the causation issue and to provide a meaningful explanation of its conclusions." *Id.* at 878. The Commission did so in this case.

## V. The CIT Did Not Impose a "Substantial Factor" Test

Appellants further argue the CIT "erred in introducing the substantial factor test of causation as a means of bypassing the threshold requirement of 'but-for' causation in fact." Appellants' Br. 16. Appellants say in *Swiff-Train II*, "on its own motion, the CIT introduced the 'substantial factor' test of legal causation to assess whether the Commission had interpreted the 'by reason of' language in accordance with law." *Id.* at 34; Reply Br. 9 ("Since the Commission refused to respond to the but for causation argument, except to state that the causation standard itself, and not simply the analysis the Commission adopts to apply the standard, is left to the discretion of the Commission, the CIT, in upholding the Commission's remand determinations, crafted from thin air the substantial factor causation standard sua sponte, and concluded that is what the Commission had applied."). Appellants also challenge the CIT's reasoning that "if the Commission undertakes a proper 'substantial factor' analysis and finds subject imports the legal cause of material injury, then the Commission has, perforce, necessarily determined that the subject imports are the 'but for' cause of injury." Appellants' Br. 34. They say this reasoning, "*though accurate*," led to an error of law because it allowed the Commission to "bypass the counterfactual analysis." *Id.* at 34–35 (emphasis added). To Appellants, a two-step analysis is required: "the Commission must first determine whether the subject imports are a 'but-for' cause of injury and then assess whether they were the substantial factor in causing the harm. The fact that this two-part analysis did not occur was an error of law." *Id.* at 42.

Nowhere in *Swiff-Train II* did the CIT "introduce[] the substantial factor test of causation" as Appellants allege. *Id.* at 16. The CIT provided a detailed discussion of this court's cases to illustrate the interplay between but-for causation and the substantial-factor analysis to

support its observation that "'[s]ubstantial factor' analysis subsumes [the] 'but for' causation analysis, albeit with multiple acts and effects for consideration." *Swiff-Train II*, 999 F. Supp. 2d at 1343. In support, the CIT cited *Mittal Steel*, where this court noted "*Bratsk* . . . simply required the Commission to consider the 'but for' causation analysis in fulfilling its statutory duty to determine whether the subject imports were a *substantial factor* in the injury to the domestic industry, as opposed to a merely 'incidental, tangential, or trivial' factor." *Mittal Steel*, 542 F.3d at 879 (quoting *Nippon Steel*, 345 F.3d at 1381) (emphasis added). The CIT then observed "if the Commission undertakes a proper 'substantial factor' analysis and finds subject imports the legal cause of material injury, then the Commission has, perforce, necessarily determined that the subject imports are the 'but for' cause of injury." *Swiff-Train II*, 999 F. Supp. 2d at 1343; *cf. Burrage*, 134 S. Ct. at 889 n.4 (explaining that in *Price Waterhouse*, the Court "did not eliminate the but-for-cause requirement imposed by the 'because of' provision of [the statute at issue], but allowed a showing that discrimination was a 'motivating' or 'substantial' factor to shift the burden of persuasion to the employer to establish the absence of but-for cause").

Thus, the CIT was not attempting to "bypass the counterfactual analysis," Appellants' Br. 34–35; rather, it was accurately explaining the relationship between our cases that discuss causation in terms of the "substantial factor" analysis and those that call for a "but-for" analysis. In doing so, the CIT noted Appellants "are correct: a finding of cause-in-fact must express, *at a minimum* (and howsoever expressed), the fundamental sufficiency of a 'but for' analysis." *Swiff-Train II*, 999 F. Supp. 2d at 1344 (emphasis added); *see Burrage*, 134 S. Ct. at 889 ("[T]he phrase, 'by reason of,' requires *at least* a showing of 'but for' causation.") (emphasis added). Therefore, the CIT concluded, "the Commission ha[d] properly framed the

legal basis upon which to determine whether subject imports are the cause-in-fact of material injury, to wit, 'notwithstanding any injury from other factors.' *That is an obvious expression of a 'but for' cause-in-fact inquiry.*" *Swiff-Train II*, 999 F. Supp. 2d at 1344. (emphasis added). Appellants' unsupported suggestion that the CIT independently imposed a new test is therefore unavailing. Furthermore, Appellants cite no support for their proposition that a two-step analysis is required whereby the Commission must first determine whether the subject imports are a "but-for" cause of injury and then assess whether they are the substantial factor in causing the injury.

Accordingly, this court finds no error in the CIT's analysis.

### VI. Substantial Record Evidence Supports the Commission's Determination

Finally, U.S. Importers argue the Commission's decision was not based on substantial evidence because a counterfactual analysis was not performed. In contrast to the Commission's findings, Appellants offer their own summation of the record evidence: "The heart of the analysis is the observation that the record in this investigation offers a rare extended natural experiment from the beginning of 2009 through the end of the [period of investigation] that supports unambiguously a strong inference that U.S. demand for [multilayered wood flooring] is extremely highly—bordering on infinitely—elastic." Appellants' Br. 49–50. Therefore, Appellants conclude, "[a]s a result of the extremely high elasticity of U.S. demand for [multilayered wood flooring], increased sales of subject imports in the U.S. market have not resulted in lower [multilayered wood flooring] prices, and have therefore not harmed the U.S. [multilayered wood flooring] industry." *Id.* at 50; *see also id.* at 52 ("The *only* economically coherent explanation for why increased sales of

[multilayered wooding flooring] in the U.S. market in the face of declining demand did not reduce U.S. [multilayered wooding flooring] prices is that U.S. demand for [multilayered wooding flooring] is extremely highly elastic (*i.e.*, geometrically, the demand curve is almost horizontal, locking down price even when supply increases).”). Thus, U.S. Importers believe their “analysis shows the U.S. industry’s observed condition during the [period of investigation] to be the same as its condition but-for competition with the subject imports.” *Id.*

As noted, when analyzing whether an industry is materially injured “by reason of” subject imports, the Commission considers the volume of subject imports, their price effects, and their impact on the domestic industry, 19 U.S.C. § 1677(7)(B)(i), (C)(i)–(iii), and must support its ultimate conclusion with substantial evidence. Here, the Commission examined each of these factors and explained in detail why substantial evidence supports both its findings and its ultimate affirmative injury determination. It also identified substantial record evidence establishing a causal link between subject imports and material injury to the domestic industry. Furthermore, the Commission considered the role of other factors in the market that may have injured the domestic industry and concluded these factors did not break the causal link between subject imports and material injury to the domestic industry. Accordingly, the Commission’s causation analysis was supported by substantial evidence and was in accordance with law.

Specifically, the Commission made detailed findings based on the record evidence on the following factors: (1) “subject imports from China and the domestic like product competed in the U.S. market primarily based on *price*,” *Remand Views* at 28 (emphasis added); (2) “traditional quarterly *pricing data*” indicated subject imports “undersold the domestic like product throughout the [period of investigation],” *id.* (emphasis added); (3) “low-priced

subject imports gained *sales and market share* directly at the domestic industry's expense," *id.* at 29 (emphasis added); (4) "by underselling the domestic-like product at significant margins while selling products that were highly substitutable for the domestic like product and competing in the same geographic markets and channels of distribution," subject imports "maintain[ed] a *significant volume* both in absolute terms and relative to consumption in the United States, increase[d] significantly relative to domestic production, and capture[d] *significant market share* from the domestic industry," *id.* at 30–31 (emphases added); (5) low-priced subject imports "depressed *prices* of the domestic like product in the U.S. market," *id.* at 31 (emphasis added); and (6) the low-priced, directly competitive subject imports had a *materially injurious impact* on the domestic industry, *id.* at 36. In addition, the Commission explained how the record evidence revealed that, regardless of whether "U.S. consumption was increasing or declining," through significant underselling, subject imports continued to gain market share, capturing significant market share from the domestic industry. *Id.* at 31.

As to Appellants' alternative view of the record and their arguments regarding the elasticity of market demand, the Commission acknowledged demand declined overall during the period of investigation. *Id.* at 42 ("[Q]uestionnaire respondents generally reported decreased demand for [multilayered wood flooring] during the [period of investigation]."). Nonetheless, based on the data on the record, the Commission explained subject imports maintained a significant volume that increased significantly relative to domestic production and consumption by underselling the domestic-like product at significant margins regardless of demand conditions. *Id.* at 43–45. Thus, the Commission concluded, the "domestic industry's loss of market share to unfairly traded subject

imports from China . . . throughout the period of investigation was not a function of demand." *Id.* at 44.

Having considered the volume of subject imports, their effect on prices of the domestic-like product, and their impact on the domestic industry within the context of the business cycle and relevant conditions of competition, the Commission found the domestic multilayered wood flooring industry was materially injured by reason of subject imports from China. *Id.* at 36. This determination was supported by substantial evidence. *See Cleo*, 501 F.3d at 1296 (The substantial evidence test does not require an "absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record.").

## CONCLUSION

Accordingly, the decision of the United States Court of International Trade is

**AFFIRMED**